[No. 81244-6. En Banc.]
Argued October 29, 2009. Decided March 11, 2010.

*In the Matter of the Personal Restraint of* SHAWN RAINEY, *Petitioner.*

*David L. Donnan* and *Nancy P. Collins* (of *Washington Appellate Project*), for petitioner.

*Steven J. Tucker, Prosecuting Attorney for Spokane County,* and *Mark E. Lindsay, Deputy,* for respondent.

¶1 STEPHENS, J. — This case involves a challenge to a no-contact order imposed as a condition of a criminal sentence. A jury convicted Shawn Rainey of first degree kidnapping and telephone harassment. In addition to imposing a standard range sentence and community custody,

the sentencing court ordered Rainey to have no contact with his ex-wife and daughter for the statutory maximum for his crime: life. Rainey challenges the lifetime no-contact order with his daughter as violative of his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and of his fundamental constitutional right to parent. We hold that the order did not violate Rainey's *Apprendi/Blakely* rights. However, because the sentencing court did not consider whether the lifetime duration of the order was reasonably necessary to serve the State's interests, we strike the no-contact order and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2005, Rainey was convicted of telephone harassment of his wife, Kimberly,[1] and of first degree kidnapping of his three-year-old daughter, L.R. *State v. Rainey*, noted at 137 Wn. App. 1050, 2007 WL 858750, at *1-2, 2007 Wash. App. LEXIS 554, at *1-7, *review denied*, 162 Wn.2d 1017 (2008). After a bitter divorce predicated on Rainey's domestic violence and threats, Kimberly started dating another man. Rainey repeatedly telephoned and harassed Kimberly, threatening to leave town with their daughter. He accused Kimberly's new boyfriend of child abuse, but Child Protective Services determined that no evidence of child abuse existed. Rainey also began refusing to return L.R. from visitation in accordance with the parenting plan. Finally, Rainey sold his home and disappeared with L.R., taking her to Mexico. Weeks later, he called Kimberly and demanded that she move "a thousand miles away, pay his attorney fees, give him custody, and tell the police that she knew he had taken L.R. on vacation." 2007 WL 858750, at *1, 2007 Wash. App. LEXIS 554, at *2-3. When she refused, he told her, " '[H]appy hunting.' " 2007 WL 858750, at *1, 2007 Wash.

---

[1] Because Rainey, Kimberly, and L.R. shared a last name, using Kimberly's first name is clearer. No disrespect is intended.

App. LEXIS 554, at *3. Rainey and L.R. were later apprehended at the Mexico-Texas border.

¶3 While in custody in Texas, Rainey sent several letters to L.R. in which he blamed Kimberly for keeping the family apart. For example, he said, "I'm sorry that Mommy doesn't want to let us be a family. She has no idea what she's making the two of you miss" and "It's too bad for Mommy that she couldn't swallow her pride and remember how much we did love each other at one time. All she wants to do now is hurt me and you but Daddy and his family won't let that happen." Verbatim Report of Proceedings (VRP) (Oct. 12, 2005) at 385-87.

¶4 The State charged Rainey with, among other things, first degree kidnapping and telephone harassment. The basis for the kidnapping charge (a class A felony) was that Rainey intentionally abducted L.R. to inflict extreme emotional distress upon Kimberly.[2] The jury convicted Rainey of these charges.

¶5 At sentencing, L.R.'s grandfather offered a statement[3] in which he described the "great financial and measurable emotional damage" Rainey had inflicted upon Kimberly and L.R.: "[Shawn] spent the precious time he had with [L.R.] harassing Kim. He spent his money on himself, not child support. . . . Shawn took [L.R.] for one purpose only: To get back at Kim, to scare and hurt her." VRP (Sentencing Hr'g Nov. 30, 2005) at 15. The grandfather also discussed Rainey's refusal to take responsibility for his actions, describing how he "continued to blame everything on his wife" during the trial and had even blamed L.R. at one point. *Id.* In closing, he urged:

> [M]y daughter . . . will, unfortunately, spend a considerable amount of time . . . speculating [about] when and if Shawn will seek revenge on Kim or [L.R.], regardless of [the] restrictions placed on him . . . .

---

[2] "A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent . . . [t]o inflict extreme mental distress on him or a third person." RCW 9A.40.020(1)(d).

[3] L.R.'s grandfather also testified during trial.

Finally, my family's overriding concern is for our granddaughter [L.R.]. We hope the Court can impose the longest time . . . and most protective Order to shield her from Shawn's influence. Until Shawn accepts responsibility for his lies and acts, he will not change.

*Id.* at 16.

¶6 The prosecutor reminded the court that first degree kidnapping is a statutory serious violent felony and emphasized the domestic violence context of the crime. She pointed out that the defendant had shown no remorse or respect for protection orders, violating them consistently over the course of the case, and that he had used child protective services to harass his ex-wife. For that reason, the State asked for an order of no contact with Kimberly or L.R. for the "maximum amount of time, or until such time as the Family Courts have looked into the matter and have decided that there should be some type of supervised visitation." *Id.* at 13.

¶7 Defense counsel pointed out that no physical harm came to L.R. and strongly objected to the no-contact order:

I think that imposes a sanction against the child. I think that all children look up to their father as kind of a hero and, when your hero is taken away and you can no longer communicate with that person, it does more harm with the child. I think, obviously, the communications in this case need to be monitored in some sort . . . but I don't see any need to have absolutely no contact with the child.

*Id.* at 18-19. Mr. Rainey himself added, "I would like to apologize. . . . Sometimes things are hard to deal with, and I don't always make the right decisions. I understand that. I don't feel that I am a threat to anybody, especially my daughter." *Id.* at 21.

¶8 The sentencing judge noted that domestic violence had "permeated these offenses." *Id.* at 22. She imposed the highest standard range sentence of 68 months, plus a statutorily mandated 24-48 month period of community custody. *Id.* The judge also "recognize[d] the requested

conditions," imposing an order of no contact with Kimberly and, because the child was the victim of the kidnapping, with L.R. *Id.* The judge did not specify the order's length. *Id.* The judgment and sentence imposes the order for the statutory maximum of a class A felony: life. Pet'r's Suppl. Br., App. B at 6 (no-contact order in judgment and sentence). The defense attorney later verified that the court intended to impose a lifetime no-contact order with L.R. VRP (Sentencing Hr'g Nov. 30, 2005) at 27.

¶9 Rainey filed a pro se personal restraint petition (PRP) challenging, inter alia, the lifetime no-contact order with L.R. as violative of his rights under *Apprendi* and *Blakely* and of his fundamental right to parent. The Court of Appeals dismissed the PRP. We granted discretionary review solely as to the imposition of the no-contact order.

## ANALYSIS

### I. Standard of Review

¶10 The Sentencing Reform Act of 1981, RCW 9.94A.505(8), authorizes the trial court to impose "crime-related prohibitions" as a condition of sentence. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Our prior case law has not definitively set forth the standard of review for a trial court's imposition of crime-related prohibitions. We generally review sentencing conditions for abuse of discretion. *Id.* But we more carefully review conditions that interfere with a fundamental constitutional right, *id.*, such as the fundamental right to the care, custody, and companionship of one's children. Such conditions must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *Id.* The extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny. *Id.* at 34 (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). Nevertheless, because the imposition of crime-

related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion. A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007).

## II. Rights under *Apprendi* and *Blakely*

### A. Background

¶11 Rainey claims that the sentencing court could not impose a lifetime no-contact order as part of his sentence without engaging in judicial fact-finding contrary to *Apprendi* and *Blakely*. *Apprendi* held that a judge may not judicially find facts, other than prior convictions, used to support a sentence above the statutory maximum for the offense found by the jury. 530 U.S. at 490. *Blakely* then defined "statutory maximum" as the standard sentencing range, i.e., the amount of punishment the judge may impose simply as a result of the facts reflected in the jury verdict and the offender score without resort to aggravating factors or other facts. 542 U.S. at 303; *see also State v. Evans*, 154 Wn.2d 438, 441-42, 114 P.3d 627 (2005) (reaffirming this definition).

¶12 In Washington, a court may impose "crime-related prohibitions" as conditions of a sentence. RCW 9.94A-.505(8). We recently held that the maximum operative length of these prohibitions is the statutory maximum for the crime, not the standard sentencing range for incarceration. *State v. Armendariz*, 160 Wn.2d 106, 118-20, 156 P.3d 201 (2007). Thus, a Washington trial court has the discretion to impose a crime-related prohibition up to the statutory maximum for the crime of which the defendant is convicted without resort to aggravating factors of any kind.

### B. Rainey's Contention

¶13 Rainey acknowledges *Armendariz*'s holding but argues that it did not mention *Blakely* and did not alter

*Blakely*'s definition of "statutory maximum." Pet'r's Suppl. Br. at 18-19. In its most persuasive form, Rainey's argument seems to be that the judge must have *some* factual predicate for imposing a prohibition to show that it is (1) crime-related and (2) not an abuse of discretion. *Blakely* requires that these facts be proved to the jury, not found by the judge. Synthesizing *Armendariz* and *Blakely*, Rainey argues that the facts warranting the prohibition must reasonably be reflected in the jury verdict itself.

¶14 Even if we assume (without deciding) that Rainey's synthesis of *Armendariz* and *Blakely* is correct, his challenge to the no-contact order in his case fails. A no-contact order with the victim is a crime-related prohibition. *See Armendariz*, 160 Wn.2d at 113 (defining "crime-related" to include no contact with the victim of a no-contact order violation who merely witnessed an assault); *Warren*, 165 Wn.2d at 33 (holding that no contact with a nonvictim was crime-related and suggesting that no contact with the victim would be also). Therefore, under Rainey's reading of the law, RCW 9.94A.505(8) authorizes a sentencing court to impose a no-contact order with the victim for the statutory maximum of the crime when the jury verdict reflects the facts warranting the prohibition.

¶15 Here, the jury found that Rainey abducted his daughter in order to inflict extreme emotional distress on his ex-wife. *Rainey*, 2007 WL 858750, at *1, 3, 2007 Wash. App. LEXIS 554, at *8. This verdict reflects L.R.'s status as a victim and the domestic violence context of the crime. We have previously upheld no-contact orders in similar contexts. *See Armendariz*, 160 Wn.2d at 113. There is no indication that the judge found any facts beyond the jury verdict when imposing the no-contact order in Rainey's case. Therefore, the sentence imposed does not implicate Rainey's rights under *Apprendi* and *Blakely*, and his challenge to the order fails.

### III. Fundamental Right To Parent

¶16 Rainey also challenges the no-contact order with L.R. as violative of his fundamental constitutional right to parent. *See generally Santosky*, 455 U.S. 745. A defendant's fundamental rights limit the sentencing court's ability to impose sentencing conditions: "[c]onditions that interfere with fundamental rights" must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *Warren*, 165 Wn.2d at 32.

#### A. *State's Interest*

¶17 The State's interest in protecting Kimberly and L.R. is compelling. *See id.* at 35 (holding that the protection of the two victims and their mother, a witness to the crime, was a compelling state interest). Each of them was a victim of the kidnapping—L.R. because she was abducted from her home and Kimberly because Rainey intended to inflict extreme emotional distress upon her. *See* RCW 9A.40-.020(1)(d). Generally, the State has a compelling interest in preventing future harm to the victims of the crime. *See Warren*, 165 Wn.2d at 33 (discussing Washington courts' reluctance to uphold no-contact orders with persons *other* than victims).

#### B. *Reasonable Necessity: Scope*

¶18 As to the "reasonable necessity" requirement, the interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules. *Compare, e.g., State v. Ancira*, 107 Wn. App. 650, 27 P.3d 1246 (2001) (holding that the State did not show that no contact with the defendant's nonvictim children was reasonably necessary to protect their safety)), *with Warren*, 165 Wn.2d at 34-35 (distinguishing *Ancira* because the victims' mother had testified and had previously been assaulted by the defen-

dant). It would be inappropriate to conclude that, simply because L.R. was a victim of Rainey's crime, prohibiting all contact with her was reasonably necessary to serve the State's interest in her safety. Rather, we must take a more nuanced look at the State's interests with respect to L.R. and Kimberly and how a no-contact order serves those interests.

¶19 Washington law recognizes that the State has a compelling interest in protecting children from witnessing domestic violence. *Ancira*, 107 Wn. App. at 654; *Warren*, 165 Wn.2d at 34-35 (treating *Ancira* as authoritative); *see also In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980) (holding that the State may protect against harms to children's physical and mental health even if inflicted by their parents). In *Ancira*, the defendant violated a no-contact order to see his wife and children. 107 Wn. App. at 652. At some point, he drove away with his younger child, aged four, whom he refused to return until his wife talked to him. *Id.* Ancira pleaded guilty to violating the no-contact order, and a new order was imposed as to his wife and his children. *Id.* The Court of Appeals held that this new order violated Ancira's fundamental right to parent. *Id.* at 654. Although the State had a compelling interest in preventing the children from witnessing domestic violence, it had not shown that supervised visitation without the mother's presence or indirect contact such as mail would jeopardize the goal of protecting the children. *Id.* at 654-55.

¶20 In *Warren*, we cited *Ancira* as a correct statement of the law but distinguished it. 165 Wn.2d at 34-35. Warren sexually assaulted his stepchildren, and the sentencing court imposed lifetime no-contact orders as to both the stepchildren and their mother, Warren's wife. *Id.* at 31-32. Because Warren's wife had testified against Warren at trial, Warren had attempted to induce her not to do so, and Warren had assaulted her in the past, we held that it did not violate Warren's fundamental marriage right to impose the no-contact order. *Id.* at 34-35.

¶21 As the discussion of these two cases shows, there are separate interests at stake in this case. The first is the State's compelling interest in protecting Kimberly, who testified at trial despite Rainey's attempt to dissuade her and who has been assaulted and harassed by Rainey in the past. *Warren* indicates that, to protect Kimberly, it would not violate Rainey's fundamental rights to impose a lifetime no-contact order as to her.[4] The State's second compelling interest is to protect L.R. from witnessing domestic violence between her parents. *Ancira* seems to hold that a blanket no-contact order offends the right to parent because it does not permit Rainey to have indirect contact through the mail or supervised visitation. But the facts of cases such as these are important, as *Warren*'s distinction of *Ancira* confirms. The question is whether, on the facts of this case, prohibiting all contact with L.R., including indirect or supervised contact, is reasonably necessary to realize the compelling interests described above.

¶22 Unlike in *Ancira*, the sentencing court here had several reasons to suspect that allowing any contact between Rainey and L.R. would expose the child to further domestic violence. While Ancira interfered with his wife's custody, he was not convicted of perpetrating a crime against his child. In contrast, Rainey kidnapped his daughter and took her to a foreign country. VRP (Oct. 12, 2005) at 355-56, 360-61, 371-72; VRP (Oct. 18, 2005) at 995-97. His actions amounted to a serious violent felony against his daughter. VRP (Sentencing Hr'g Nov. 30, 2005) at 12. Moreover, Rainey had a history of involving L.R. in attempts to gain leverage over his wife. He had previously filed an unsubstantiated child-abuse complaint, *Rainey*, 2007 WL 858750, at *1, 2007 Wash. App. LEXIS 554, at *2, subjecting his daughter to considerable stress and questioning by Child Protective Services. Even when Rainey was incarcerated, his letters to L.R. blamed Kimberly for breaking up the family, saying that "[a]ll she wants to do now is

---

[4] Rainey does not challenge the State's interest as to Kimberly.

hurt me and you." VRP (Oct. 12, 2005) at 387. Taken together, the facts of this case could reasonably have convinced the sentencing court that Rainey continued to inflict "measurable emotional damage" on his daughter and that a no-contact order was necessary to "shield [L.R.] from [Rainey's] influence." VRP (Sentencing Hr'g Nov. 30, 2005) at 16.

¶23 A supporting rationale for the no-contact order with L.R. is that it prevents Rainey from further harassing Kimberly. We have previously recognized that a sentencing condition may prohibit a defendant's access to a means or medium through which he committed a crime. *See State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993). In *Riley*, the defendant was convicted of computer trespass and, as part of the sentence, forbidden to possess a computer, associate with other computer hackers, or post on computer bulletin boards for the duration of his sentence. *Id.* at 36. We held that it did not violate Riley's fundamental freedom of association to impose these limitations because they were reasonably necessary to prevent Riley from committing further crimes. *Id.* at 38. Simply put, they eliminated the defendant's access to the means through which he committed his crime. Here, Rainey repeatedly demonstrated that his daughter, L.R., was a means through which he harassed Kimberly. The unfounded child-abuse complaint with Child Protective Services, the kidnapping itself (which the jury found to be specifically directed at Kimberly), and the postarrest letters to L.R. blaming Kimberly are all evidence that L.R. was an effective pressure point that Rainey used to harass Kimberly. In this regard, the trial judge might have considered the no-contact order with L.R. reasonably necessary to protect Kimberly from further victimization.

¶24 Considering the facts of the case in light of the State's interests in protecting both L.R. and her mother, it was not an abuse of discretion for the sentencing court to conclude that a no-contact order of some duration was appropriate.

## C. Reasonable Necessity: Lifetime Duration

¶25 However, the discussion above pertains specifically to the *scope* of the order (no contact with L.R. at all), and not its lifetime duration. The duration and scope of a no-contact order are interrelated: a no-contact order imposed for a month or a year is far less draconian than one imposed for several years or life. Also, what is reasonably necessary to protect the State's interests may change over time. Therefore, the command that restrictions on fundamental rights be sensitively imposed is not satisfied merely because, at some point and for some duration, the restriction is reasonably necessary to serve the State's interests. The restriction's length must also be reasonably necessary. *See State v. Gitchel*, 5 Wn. App. 93, 94-95, 486 P.2d 328 (1971) (holding "unhesitatingly" that a sentencing condition banishing the defendant from the state forever would be unconstitutional); *In re Pers. Restraint of Matteson*, 142 Wn.2d 298, 311, 12 P.3d 585 (2000) (approving of *Gitchel* as "quite proper[ ]"); *cf. Warren*, 165 Wn.2d at 34-35 (upholding a lifetime no-contact order when the defendant had previously been convicted of murder and of beating the subject of the order, who had testified against the defendant at trial).

¶26 The sentencing court in this case provided no reason for the duration of the no-contact order,[5] nor did the State attempt to justify a *lifetime* order as reasonably necessary to protect either L.R. or Kimberly. Rainey argued that a no-contact order with L.R. might be harmful to her and so implied that it might be counterproductive to the State's interest in her protection in the long term. VRP (Sentencing

---

[5] It is possible that the sentencing court believed the order would be subject to a family court's later ruling on visitation. The prosecutor recommended that the no-contact order be subordinated to a family court's subsequent ruling. VRP (Sentencing Hr'g Nov. 30, 2005) at 13; *see also id.* at 22 (ruling that the court "will recognize the requested conditions"). Still, the face of the judgment and sentence does not contain any conditional language and, when the defendant asked for clarification, the judge did not qualify the lifetime imposition of the order. *See id.* at 27; Pet'r's Suppl. Br., App. B at 6 (no-contact order in judgment and sentence).

Hr'g Nov. 30, 2005) at 19, 21. There is no indication that Rainey's timely argument was considered. Given the fact-specific nature of the inquiry, we strike the no-contact order as to L.R. and remand for resentencing so that the sentencing court may address the parameters of the no-contact order under the "reasonably necessary" standard.

## CONCLUSION

¶27 We reject Rainey's *Apprendi/Blakely* argument and hold that the scope of the no-contact order with L.R. did not violate Rainey's fundamental constitutional right to parent. However, because the court below did not articulate any reasonable necessity for the lifetime duration of the no-contact order, we strike the order as to L.R. and remand for resentencing consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.