## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47408-5-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JASON J. RUZICKA, | |
| Appellant. | |

SUTTON, J. — Jason Ruzicka appeals a community custody condition prohibiting all contact with his biological children, which the trial court imposed after a jury convicted him of third degree rape of a child who was not a relative. He also challenges the trial court's denial of his motion to modify this community custody condition. He argues that restricting all contact with his biological children interferes with his fundamental constitutional right to parent and that the community custody condition is not narrowly tailored or reasonably necessary to effectuate a compelling state interest. We hold that the trial court did not abuse its discretion in imposing or refusing to modify this community custody condition and we affirm.

FACTS

I. BACKGROUND

The victim, J.K., knew Ruzicka through her older cousin, who was friends with Ruzicka and his girlfriend Andrea.[1] J.K. and her sister often spent time at Ruzicka's house and socialized with Ruzicka and his children.

In the summer of 2011, then-14-year-old J.K. was at Ruzicka's home following an all-ages show at a local venue. J.K.'s younger sister, Ruzicka and his family, and several other people were also present. J.K. drank alcohol at this gathering; she later testified that the "adults," Ruzicka or Andrea, had provided the alcohol. Report of Proceedings (RP) (Dec. 9, 2014) at 70-71. At one point during the evening, Ruzicka took J.K. to a trailer near the house and sexually assaulted her. RP (Dec. 9, 2014) at 72-76.

After this incident, J.K. continued to visit Ruzicka's residence and socialize. In 2012, she stopped going to Ruzicka's house because of an unrelated conflict between her family and Ruzicka's family. J.K. eventually told her mother about the sexual assault, and her mother reported the incident to the police.

---

[1] Andrea is also the mother of Ruzicka's children. We refer to Andrea by her first name to provide some privacy for her children, who were witnesses in this case. We use the minor victims' initials to protect their privacy. *See* Division II, General Order 2011-1, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases*.

No. 47408-5-II

## II. PROCEDURE

### A. CHARGES AND TRIAL TESTIMONY

The State charged Ruzicka with third degree rape of a child.[2]  In addition to the facts described above, the jury heard testimony about a prior incident in which Ruzicka had engaged in inappropriate sexual contact with a 16-year-old developmentally disabled young woman while she was staying overnight at his home in the summer of 2011.

The young woman, C.L., testified that Ruzicka had engaged in inappropriate sexual contact with her when she and her "god sister" were spending the night at Ruzicka's house following a concert.  RP (Dec. 9, 2014) at 146-47.  C.L. had attended the concert with her god sister, her half sister, Andrea, and Ruzicka's daughter.  C.L.'s half sister was Andrea's niece.

When the police interviewed Ruzicka about C.L.'s allegations, he asserted that he was intoxicated at the time and thought that C.L. was Andrea.  Ruzicka pleaded guilty to communication with a minor for immoral purposes and third degree assault based on that incident. RP (Dec. 11, 2014) at 46.

The jury found Ruzicka guilty of third degree rape of a child.

### B. SENTENCING

Before sentencing, the trial court ordered a presentence investigation from the Department of Corrections (DOC).  The presentence report, authored by Community Corrections Officer (CCO) Joe Sofia, included J.K.'s description of the offense.

---

[2] RCW 9A.44.079.

Sofia noted that Ruzicka had a 12-year-old son and a 16-year-old daughter. Sofia recommended that Ruzicka not have contact with "*any*" minors, and referred the trial court to a preprinted list of supervision conditions (Appendix H). Clerk's Papers (CP) at 39-40. Condition 19 of Appendix H provided that Ruzicka was to "[h]ave no contact with *any* minors or children under the age of 18 without prior approval from your community corrections officer and sexual deviancy treatment provider." CP at 44. And condition 18 prohibited Ruzicka from initiating, "or hav[ing] in any way, physical contact with children under the age of 18 for any reason, to include in employment, social, and recreational situations." CP at 44.

At the sentencing hearing, the State recommended that the trial court follow Sofia's recommendations, including restricting Ruzicka from contact with any children, at least until after Ruzicka had undergone a psychosocial evaluation. Ruzicka argued that Sofia's recommendation that he (Ruzicka) have no contact with any minors, including his own children, was not appropriate and asked for a continuance so he could present witnesses on this issue.

The trial court denied Ruzicka's request to continue the sentencing hearing, stating:

> I guess, here's what I am going to do. I am going to impose a condition that there be no contact with minors. What I am going to do, I'd like a hearing set, and I'd like [the CCO who wrote the presentence investigation report] to be here for that hearing, and I'd like Mr. Ruzicka's family to be here for that hearing, and I'd like to hear some sort of testimony about their thoughts on whether it's appropriate for him to have contact with his children, and if so, why.
>
> . . . .
>
> If not, why not. I'd like to—I mean, I get the history, and I get the conviction that occurred here. I'm not particularly interested in separating him from his family unless that's absolutely necessary.

RP (Mar. 6, 2015) at 25.

4

The trial court then stated that until this hearing was held, the no contact condition included Ruzicka's biological children. The judgment and sentence incorporated Appendix H and provided, "No contact [with] minors, pending further order of the court regarding his children." CP at 54, 63.

C. MODIFICATION HEARING

On the day of the hearing about the contact restrictions, the DOC filed a special report "to notify the Court that [the] DOC is opposed to Mr. Ruzicka having contact with any minors, including his children" for the following reasons:

- There is a constant pattern to Mr. Ruzicka's association with young girls. In the first cause that DOC supervised him on (111038922/Pierce), not only was his victim 16 and developmentally delayed, but the victim's ½ sister EL admitted to police that she [sic] had intercourse with her when she was 18, and also had made sexual advances towards her and put his hand under her shirt to grab her breast per the police report.

- Mr. Ruzicka gave alcohol and possibly Marijuana to his victim in the current cause, and she was under aged. His daughter is currently 16, about the same age as his victim JK. There is no guarantee he wouldn't do the same with here, and possibly his son, who is 12.

- Mr. Ruzicka told me that he had been with his current girlfriend, AD, for the last 17 years. That would have made her 16 years old when he and she began dating.[3]

- Mr. Ruzicka made the excuse that he had mistaken his victim for his wife while he was drunk. There is the possibility that he could do the same thing with his daughter if he got intoxicated again.

CP at 68.

At the hearing, the State again opposed Ruzicka's request to modify the no contact provisions, at least until after a psychosexual evaluation was done. The State expressed concern

---

[3] Ruzicka, who was 38 at the time of his sentencing, would have been 21 at that time.

that there was more than one victim, that there were allegations of partying at Ruzicka's house, and that both victims were "connect[ed]" to Andrea. RP (Mar. 27, 2014) at 15.

Sofia testified that Ruzicka's crimes, and even his relationship with Andrea, demonstrated a pattern of involvement with young girls near his daughter's current age, including C.L., J.K., and possibly C.L.'s 18-year-old half sister. Sofia also expressed concern about the alcohol and marijuana abuse at the parties at Ruzicka's house "and the house being pretty much known as an open party house." RP (Mar. 27, 2014) at 17. In addition, Sofia testified that Ruzicka had stated that he "had mistaken [one of] the victim[s] for his wife while he was intoxicated." RP (Mar. 27, 2014) at 17. Sofia believed that prohibiting Ruzicka's contact with all minors was "the right thing to do" to prevent this from happening again if there were any young girls, including Ruzicka's daughter, staying in Ruzicka's house. RP (Mar. 27, 2014) at 17.

Defense counsel again argued that the no contact provisions should not include Ruzicka's biological children. Specifically, he argued that Ruzicka had stopped drinking and that, at least while he was in custody, there was no risk Ruzicka could have physical contact with his children, so "at least . . . phone contact" would be appropriate. RP (Mar. 27, 2014) at 18.

Ruzicka's two children and Andrea all testified that they were not in favor of Ruzicka having no contact with the children and that his absence and lack of contact had affected the children's performance at school. They suggested that even telephone contact would be beneficial. And they all testified that Ruzicka had never behaved inappropriately with his children.

Following this testimony and argument, the trial court stated:

Well, I guess this is the way I see it: It seems to me as though the house, the setting, the environment in the house has created a situation where young girls are present. Some are family members, some are not. Maybe there's alcohol, maybe there's

6

not. . . . I am concerned that Mr. Ruzicka, Mr. Ruzicka's children are a lure for other kids to be at the house, and as a result, I am going to, until there's a psychosexual evaluation done, I am going to prohibit any contact between Mr. Ruzicka and his children.

I just—the incidents that have happened I think are incidents that happened with people who were visiting, theoretically, family members at the Ruzicka house, and it's happened twice, and it's not going to happen a third time.

RP (Mar. 27, 2014) at 18-19.

After the trial court made this comment, Andrea clarified that from the time the case started until after Ruzicka was in custody, there were no girls visiting the house when Ruzicka was there. Andrea then asked the court why Ruzicka could not have phone contact with his children. The trial court simply responded, "Okay." RP (Mar. 27, 2014) at 20.

The trial court subsequently issued the following written order:

The court, after hearing argument from both parties regarding the modification of the condition of having contact with minors, hereby denies defense motion for defendant to have contact with his minor children. The court will reconsider after the defendant obtains a psychosexual evaluation.

CP at 70.

Ruzicka appeals the community custody condition prohibiting all contact with his biological children.

ANALYSIS

I. PRINCIPLES OF LAW

"Sentencing courts can restrict fundamental parenting rights by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010) (citing *State v. Berg*, 147 Wn. App. 923, 942, 198 P.3d 529 (2008); *State v. Ancira*, 107

7

Wn. App. 650, 654, 27 P.3d 1246 (2001)). These conditions "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). Any "crime-related prohibitions affecting fundamental rights must be narrowly drawn" and "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35.

"We generally review [the imposition of crime related prohibitions] for abuse of discretion . . . [,] [b]ut we more carefully review conditions that interfere with a fundamental constitutional right, . . . such as the fundamental right to the care, custody, and companionship of one's children." *Rainey*, 168 Wn.2d at 374 (citation omitted). "Nevertheless, because the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion." *Rainey*, 168 Wn.2d at 374-75.

## II. SCOPE OF CONTACT RESTRICTION

Ruzicka argues that restricting *all* contact with his biological children was overbroad. We hold that the trial court narrowly tailored the condition and, therefore, did not abuse its discretion by imposing this restriction or by denying Ruzicka's motion to modify these conditions.

The compelling interest the State articulated here was protecting children from harm. The trial court's specific concerns were to prevent (1) Ruzicka potentially having direct sexual contact with children, including his biological children, whether this contact was intentional or accidental while Ruzicka was impaired by alcohol, and (2) Ruzicka using his children to obtain access to

other children. Restricting physical contact with all minors certainly promotes these compelling interests.

Ruzicka argues, however, that prohibiting *all* contact, including telephone contact, with his biological children was not narrowly tailored to promote these interests and interferes with his right to parent his children. We disagree.

Importantly, the trial court provided Ruzicka with a method to modify the restriction. First, community custody condition 19 allows Ruzicka to have contact with minors with prior approval from his CCO and sexual deviancy treatment provider. Second, when the trial court denied Ruzicka's motion to modify the no contact conditions, it stated that these conditions existed in relation to Ruzicka's biological children only until he completed a psychosexual evaluation, which would provide the trial court with additional information to allow it to more narrowly tailor the contact restrictions as to Ruzicka's biological children. The trial court invited Ruzicka to move to modify the no contact condition after he completed his psychosexual evaluation. By providing access to his biological children if approved by his CCO and treatment provider and by imposing the condition only until Ruzicka obtained a psychosexual evaluation, the trial court provided Ruzicka a method through which he could establish that non-physical access to his biological children would not be harmful to them. Thus, the trial court narrowly tailored the no contact condition in a way that balanced the State's interests in protecting children, including Ruzicka's own children, from harm with Ruzicka's right to parent his children. Thus, the trial court did not abuse its discretion by restricting Ruzicka's contact with his biological children pending further evaluation or by denying his motion to modify the no contact conditions.

No. 47408-5-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._
SUTTON, J.

We concur:

_Lee, P.J._
LEE, P.J.

_Melnick, J._
MELNICK, J.

10