IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75902-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ISRAEL FABIAN SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 22, 2018 |

2018 JAN 22 AH 9: 24
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SCHINDLER, J. — A jury convicted Israel Fabian Sanchez of two counts of

rape of a child in the first degree. The court imposed a lifetime no-contact order

prohibiting Sanchez from having any contact with his stepdaughter and "other

family members." We remanded to address the parameters of the no-contact

order. On remand, the court amended the no-contact order to prohibit Sanchez

from any contact with his children until the age of 18. Sanchez challenges the

amended no-contact order. We affirm.

FACTS

The State charged Israel Fabian Sanchez with two counts of domestic

violence rape of a child in the first degree. At trial, extensive testimony

established Sanchez raped his stepdaughter J.F. when she was six-years-old and seven-years-old. J.F. testified that Sanchez "put down my pants" and "put[ ] his thing in my bottom" two different times.

J.F.'s mother M.H.-A. testified that on March 7, 2013, she saw Sanchez in their bedroom anally raping J.F. M.H.-A. said their five-year-old son J.F.-H. was playing with a toy car in the bedroom and their two-year-old daughter A.F.-H. was "[w]atching what [Sanchez] was doing to [J.F.]."

M.H.-A. testified that Sanchez "got mad" and "was telling my little boy that I was throwing him out and that it was my fault that the family was going to be destroyed, so my little boy started to cry and said that's not right." M.H.-A. testified that J.F.-H. begged her to forgive Sanchez because he "promised [J.F.-H.] that he would never do anything bad again." M.H.-A. stayed with Sanchez. M.H.-A. told J.F. that "if it happened again, I would have to leave him."

M.H.-A. testified that on March 29, 2014, she noticed J.F. sitting with her hands "between her legs," looking "[a]fraid." M.H.-A. asked J.F. if "something bad had happened." M.H.-A. told J.F., "[T]he promise that I had made to her before I would fulfill this time." J.F. told M.H.-A. she did not want to tell her what had happened because Sanchez threated "to hit her." After M.H.-A. told J.F. that she would not allow Sanchez to "go anywhere near her," J.F. told her mother that Sanchez raped her while M.H.-A was at work. M.H.-A. took the three children to a community center to get help and contact the police.

The jury found Sanchez guilty of two counts of rape of a child in the first degree. By special verdict, the jury found that Sanchez and J.F. were "members of the same family or household" when he committed the crimes.

The State recommended a lifetime no-contact order to protect M.H.-A. and J.F. M.H.-A. asked the court to "grant a protective order for life, for me and my [three] kids." M.H.-A. said Sanchez abused her and the three children. M.H.-A. told the court, "I am very afraid of [Sanchez] because he threatened to take my kids away. I am fearful that he may fulfill his threat and may hurt my kids more. They are also fearful of him."

The court imposed a 160-month sentence and entered a no-contact order for "LIFE" that prohibits Sanchez from having contact with M.H.-A., J.F.,[1] and "other family members."

On appeal, Sanchez challenged imposition of the no-contact order as to "other family members." The State conceded the court did not "address on the record the 'reasonably necessary' standard with respect to Sanchez's two biological children" and "the phrase 'other family members' is overbroad."[2] We remanded to address the no-contact order.[3]

On remand, the State requested the court impose an order prohibiting any contact between Sanchez and his biological children J.F.-H. and A.F.-H. until

---

[1] In the judgment and sentence, J.F. is referred to as "J.H." with her date of birth. We use J.F. for consistency.

[2] State v. Sanchez, No. 72807-5-I, slip op. at 9 (Wash. Ct. App. June 13, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/728075.pdf.

[3] Sanchez, No. 72807-5-I, slip op. at 9.

they reach the age of 18. The State argued the evidence established the two biological children were in the bedroom when Sanchez raped J.F. The prosecutor also argued the evidence showed:

> [T]he defendant used his biological son, [J.F.-H.], essentially as a pawn to manipulate his mother to try to maintain her relationship with the defendant despite the mother's knowledge that the defendant was sexually abusing her daughter, [J.F.].
> The two children were intricately a part of this abuse [and] in close proximity to it.

Sanchez's attorney agreed the court "is well within its discretion to impose physical no contact with . . . Sanchez's children" but asked the court to allow written communication with J.F.-H. and A.F.-H. The State had not "specifically addressed that question" with M.H.-A. but relied on her previous request to "protect my children" to argue Sanchez should be prohibited from having any contact with his biological children. The State also argued, "[T]he State would frankly take the very paternalistic or maternalistic approach to this because of the domestic violence relationship that was evident in this family."

The court agreed with the State's position as "fully consistent" with the testimony at trial. The court amended the no-contact order to delete "other family members" and instead, "specifically identify the defendant's two biological children, [J.F.-H.] . . . and A.F.-H." The order states why imposition of the no-contact order with J.F.-H. and A.F.-H. is necessary:

> According to testimony at trial, A.F.-H. was present in the same bedroom sleeping a very short distance away from J.F. when the defendant anally raped J.F. Moreover, the defendant used J.F.-H. as a pawn to manipulate his mother to staying in her relationship with the defendant despite the mother's knowledge that the

4

defendant was sexually abusing her daughter J.F. Evidence showed that these two biological children were in extraordinarily close proximity to the sexual abuse that the defendant subjected J.F. to.

Because of the nature and circumstances of the offense, the court has imposed a condition that the defendant may not have any contact with minors for the statutory maximum period of time. Thus, the court finds a no-contact order prohibiting the defendant from having any contact with his aforementioned biological children is reasonably necessary to protect their emotional and physical safety until they are 18-years-of-age.

## ANALYSIS

Sanchez argues the court violated his fundamental constitutional right to parent by imposing a no-contact order prohibiting contact between Sanchez and A.F.-H. and J.F.-H. until they reach the age of 18.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, authorizes the court to impose "crime-related prohibitions" as a condition of a sentence. RCW 9.94A.505(9). A "crime-related prohibition" prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review the imposition of crime-related prohibitions for abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010).

We will uphold a condition if it is reasonably related to the crime. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). But where the sentencing condition affects a constitutional right and interferes with a fundamental constitutional right, such as the right to parent, a "[m]ore careful review" is required. Warren, 165 Wn.2d at 32.

More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional

5

right. Conditions that interfere with fundamental rights must be reasonably necessary to accomplish the essential needs of the State and public order.

Warren, 165 Wn.2d at 32.[4] To the extent a sentencing condition affects a constitutional right, we apply strict scrutiny. Rainey, 168 Wn.2d at 374.

Nevertheless, because the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review remains abuse of discretion.

Rainey, 168 Wn.2d at 374-75.

We conclude the no-contact order is reasonably necessary to achieve a compelling State interest of protecting J.F.-H. and A.F.-H. See Warren, 165 Wn.2d at 34-35.

State v. Ancira, 107 Wn. App. 650, 27 P.3d 1246 (2001), is distinguishable. In Ancira, the State did not "explain[ ] why prohibiting Ancira from contacting his wife would not protect the children from the harm of witnessing domestic violence between their parents." Ancira, 107 Wn. App. at 655.

Sanchez also argues the court did not "consider less restrictive alternatives to a blanket no-contact order." The record does not support his argument. The record shows the court considered but rejected the request to write letters to his children.

---

[4] Citations omitted.

We conclude the court did not err in entering the no-contact order prohibiting Sanchez from having any contact, including letters, with his children until they reach the age of 18, and affirm the amended no-contact order.

Schindler, J.

WE CONCUR:

Dwyer, J.

Becker, J.