# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57435-7-II |
| Respondent, | |
| v. | |
| STACY BROOKE SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Stacy Brooke Smith appeals her conviction of controlled substance homicide.[1]  Smith was a friend of Don Casey.  Smith was present when Casey died of a drug overdose in his trailer.  Smith admitted that she gave a pill containing fentanyl to Casey, but she claims that no other evidence corroborated her admission.  Therefore, she argues that the trial court erred when it denied her motion to dismiss the controlled substance homicide charge based on the lack of corpus delicti and that the evidence at trial did not establish corpus delicti.  Smith also challenges the no contact provision in the judgment and sentence that prohibits her from having contact with the victim's daughter, Danielle Rucker-Vieira, for 10 years.

We hold that (1) the evidence presented in opposition to the motion to dismiss and at trial was sufficient to establish corpus delicti, and (2) the trial court erred in imposing the no contact provision regarding Rucker-Vieira.  Accordingly, we affirm Smith's controlled substance homicide conviction, but we remand for the trial court to strike the no contact provision regarding Rucker-Vieira from Smith's judgment and sentence.

---

[1] Smith also was convicted of first degree identity theft.  Smith does not challenge that conviction.

FACTS

*Background*

On March 28, 2021, Don Casey died in the trailer that he shared with his long-term partner Sarah Hemminger. Casey's landlord, Jeff Ragan, heard shouting inside the trailer, went inside, and saw that Casey was not breathing. Smith was present when Casey began having difficulties. A toxicology screen of Casey's blood disclosed that he had taken several drugs, including fentanyl, before his death. The medical examiner attributed Casey's death to "a combination drug overdose," and opined that fentanyl was the major contributor to his death. Rep. of Proc. (RP) (Aug. 17, 2022) at 267.

Smith was a friend of Casey and Hemminger. She was at their trailer frequently. Hemminger paid Smith to perform household tasks. Ragan's partner described Smith as Casey and Hemminger's caregiver. Smith and Ragan had helped get Casey into bed earlier on the night of his death because Casey was intoxicated.

Law enforcement interviewed Smith about the circumstances of Casey's death. During this interview, Smith stated that she had given Casey a "dirty 30" pill, a type of counterfeit pill that contains fentanyl, and that he had taken a portion of it shortly before his death. RP (Aug. 17, 202) at 232. Law enforcement also interviewed Smith's friend Christine Anderson, who stated that "Smith gave Casey the dirty 30 four days before in pieces." Clerk's Papers (CP) at 5.

The State charged Smith with controlled substances homicide and identity theft.

*Motion to Dismiss*

Smith moved to dismiss the controlled substance homicide charge based on lack of corpus delicti. She did not argue that her statements to law enforcement were inadmissible.

2

Instead, she argued that there was no evidence independent of her statements that she delivered a controlled substance to Casey.

In support of this motion, Smith presented a statement of facts that likely would be elicited at an evidentiary hearing, including the following:

8.  Months after Casey's death, multiple individuals stated there were suspicious circumstances involving Casey's death.

9.  On July 14th. 2021[,] Officer Welter reviewed a coroner's report indicating the presence of 2.7ng/ml of fentanyl. The report indicated the presence of l.9 ng/ml of norfetanyl and presence of naloxone or narcon[.]

l0.  The cause of death was the acute combination of drug intoxication including fentanyl.

11.  Investigators checked the seized medications and did not observe fentanyl among the seized medications.

12.  Witnesses believed Casey had been given a counterfeit pill by Smith and Crista Anderson had knowledge about the delivery of the illegal narcotics.

13.  Witnesses believed Smith stood to receive financial gain if Casey were gone.

14.  Investigators obtained a list of prescribed medications from the list of Schedule II, III, IV, and V drugs. The coroner advised Casey had a 3 day supply of Hydrocodone prescribed on 3/11/21.

15.  Based on the autopsy report and interviews with Ragan and [Ragan's partner Debbie] Sannes, investigators believed Stacy Smith and Christa Anderson knowingly delivered a dirty 30 to Donald Casey.

16.  On 7-30-2021, Investigators arranged a confrontation call with Christa Anderson.

17.  *Anderson stated Smith gave Casey the dirty 30 four days before in pieces.*

18.  Anderson stated Smith felt at fault for Casey's death and the pill she had taken to Casey contributed to his death.

19.  Investigators contacted Smith for an interview. Smith advised investigators that she knew people were accusing her of killing Casey.

. . . .

21.     Smith was asked about the dirty 30.  Smith stated she gave Casey the counterfeit pill two or three days prior and had broken it up for him.  Smith described it as a blue dirty thirty.

22.     Smith stated she gave the pill to Casey two days before he died and that Casey took the pill in pieces.

23.     Smith did not know where she got either pill.

24.     Smith was informed that Casey died from acute intoxication including fentanyl.

25.     Smith stated Casey took the last of the counterfeit pill about 12 hours before he died.

CP at 4-5 (emphasis added).

The State responded that Smith's factual statement that she gave Casey the "dirty 30" was corroborated by Anderson's statement to law enforcement that Smith had delivered a "dirty 30" to Casey.

Taking these facts in the light most favorable to the State, the trial court denied Smith's motion to dismiss.  The case proceeded to a bench trial.

*Bench Trial and Verdict*

The trial testimony largely was consistent with the statement of facts that Smith submitted in support of her motion to dismiss.  In addition, there was testimony that when Ragan found Casey unresponsive, there was an empty Narcan (naloxone) container on the floor of the trailer.  Casey's toxicology report showed that he had naloxone in his blood at the time of his death.

The trial testimony also established that although Casey had received a prescription for pain pills, he had not filled this prescription, that none of Casey's medications contained

fentanyl, that officers did not find any other fentanyl in the trailer, and that Smith was present when Casey became intoxicated and when Casey was unresponsive.

Anderson did not testify about the statement described in the statement of facts. But one of the investigating officers testified that during his interview with Anderson, she stated that Smith had obtained a "dirty 30."

The trial court found Smith guilty of controlled substances homicide.

*No Contact Provision*

At the sentencing hearing, Casey's daughter Rucker-Vieira addressed the court and talked about how her father's death had impacted her and her concern that Smith had been distributing fentanyl. In Smith's judgment and sentence, the trial court ordered that Smith have no contact with Rucker-Vieira for 10 years.

Smith appeals her controlled substances homicide conviction and the provision in the judgment and sentence prohibiting contact with Rucker-Vieira.

ANALYSIS

A. CORPUS DELICTI

Smith argues that the trial court erred when it denied her motion to dismiss for lack of corpus delicti and that the evidence at trial did not establish corpus delicti. She contends that the State failed to present corroborating evidence independent of her statements establishing that she unlawfully delivered a controlled substance to Casey. We disagree.

1. Legal Principles

"The corpus delicti principle requires that the State prove that some crime actually occurred, which for a homicide involves establishing (1) the fact of death, and (2) a causal connection between the death and a criminal act." *State v. Green*, 182 Wn. App. 133, 142-43,

5

328 P.3d 988 (2014). More specifically, the corpus delicti of controlled substance homicide requires that the controlled substance was delivered to the deceased person and the use of that controlled substance resulted in the death. *State v. Bernal*, 109 Wn. App. 150, 153, 33 P.3d 1106 (2001).

Under the corpus delicti rule, the State is required to prove that a crime actually occurred. *Green*, 182 Wn. App. at 142. However, "[t]he corpus delicti rule prevents the State from establishing that a crime occurred solely based on the defendant's incriminating statement." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 278, 404 P.3d 629 (2017). To establish corpus delicti, "[t]he State must present corroborating evidence independent of the incriminating statement that the charged crime occurred." *Id* at 278-79. "Without such corroborating evidence, the defendant's statement alone is insufficient to support a conviction." *Id.* at 279.

"We review de novo whether sufficient corroborating evidence exists to satisfy the corpus delicti rule." *Id.* When making this determination, we "consider the totality of the independent evidence" and "view the evidence and all reasonable inferences therefrom in the light most favorable to the State." *Id*. Significantly, "less evidence is required to corroborate a defendant's incriminating statement than to support a conviction." *Id.* at 285. The State need not establish that the independent evidence alone is "sufficient to support a conviction or even show that the offense occurred by a preponderance of the evidence." *Id*. at 279. The independent evidence "must only support a logical and reasonable inference that the charged crime has occurred." *Id.*

To establish controlled substances homicide, the State had to prove that Smith unlawfully delivered a controlled substance, that Casey subsequently used the controlled substance, and that the controlled substance caused Casey's death. RCW 69.50.415(1).

    2.    Corroborating Evidence Analysis

First, Smith argues that the trial court erred in denying her motion to dismiss based on corpus delicti because the State failed to present corroborating evidence regarding the statement that she gave Casey fentanyl. Smith claims that the State could not rely on Anderson's statements as corroborating evidence because they were based on Smith's statements to Anderson.

Smith's statement of facts likely to be elicited at an evidentiary hearing, submitted in support of her motion to dismiss the controlled substance homicide charge based on lack of corpus delicti, did not state that Anderson's statements were based on Smith's admissions to Anderson. Taken in the light most favorable to the State, the factual statement from Anderson that "Smith gave Casey the dirty 30 four days before in pieces," CP at 5, indicated that Anderson had personal knowledge that Smith had delivered the "dirty 30" to Casey. This statement was corroborating evidence that Smith delivered a controlled substance to Casey. Therefore, we hold that the trial court did not err when it denied the motion to dismiss.

Second, Smith argues that the evidence presented at trial was insufficient to establish that she delivered a controlled substance to Casey because the State did not produce any corroborating evidence regarding her inculpatory statements.

The State did not present any evidence at trial regarding Anderson's statement that Smith gave Casey a "dirty 30." Instead, the investigating officer testified that Anderson had discussed with him where Smith had obtained a "dirty 30."

Viewed in the light most favorable to the State, the officer's testimony indicated that Smith had obtained possession of a "dirty 30." And the evidence showed that a "dirty 30" contained fentanyl. The evidence at trial also established that (1) Smith was a friend and

7

caregiver to Casey, (2) Casey had not filled any of his prescriptions for narcotics, (3) none of

Casey's medications contained fentanyl, (4) officers did not find any other fentanyl in the trailer,

and that someone present when Casey was unresponsive had administered Narcan, suggesting

that they knew he had ingested narcotics.

This evidence was not sufficient to prove beyond a reasonable doubt that Smith delivered

a controlled substance to Casey. But as noted above, "less evidence is required to corroborate a

defendant's incriminating statement than to support a conviction." *Hotchkiss*, 1 Wn. App. at

285. Taking all of these facts in the light most favorable to the State, they are sufficient to

corroborate that Smith delivered a controlled substance to Casey. Therefore, we hold that the

evidence presented at trial was sufficient to satisfy the corpus delicti rule.

B.      NO CONTACT PROVISION

Smith argues that the trial court erred when it included a no contact provision in the

judgment and sentence that prohibited contact with Rucker-Vieira. She asserts that the no

contact provision was improper because Rucker-Vieira was not the victim and the no contact

order was not crime related. We agree.

RCW 9.94A.505(9)[2] provides, in part, "As a part of any sentence, the court may impose

and enforce crime-related prohibitions and affirmative conditions as provided in this chapter."[3]

A crime-related prohibition is a court order "prohibiting conduct that directly relates to the

---

[2] Although the legislature amended this statute in 2022, we cite to the current version of the statute because the 2022 amendments did not alter the relevant subsection.

[3] In addition, RCW 9.94A.703(3)(b) states that a trial court has discretion to order as a community custody condition that the defendant "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." However, the provision at issue here is not a community custody condition. (Although the legislature amended this statute in 2021 and 2022, we cite to the current version of the statute because these amendments did not alter the relevant subsection.)

circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).[4]

Crime-related prohibitions can include a no-contact order regarding the victim of a crime. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 376, 229 P.3d 686 (2010).

However, no contact provisions are not necessarily limited to the direct victims of the crime. *State v. Warren*, 165 Wn.2d 17, 32-34, 195 P.3d 940 (2008). A trial court can impose a no contact provision prohibiting contact between the defendant and a victim's family member if the order directly relates to the circumstances of the crime. *Id.* at 33-34. We review such conditions for abuse of discretion and "[s]uch conditions are usually upheld if reasonably crime related." *Id.* at 32.

In *Warren*, the Supreme Court held that an order prohibiting contact between the defendant and his wife, the mother of the victims, was not an abuse of discretion because the no-contact order was reasonably related to the crime. 165 Wn.2d at 33-34. The court concluded that it was not an abuse of discretion to impose the no-contact order because Warren's wife also was the victims' mother and a witness, Warren had attempted to induce her not to cooperate with the prosecution, and Warren had a prior criminal history for beating her. *Id.* at 33-34.

However, no similar facts are present here. Rucker-Vieira was not a witness, she had no ongoing relationship with the victim because he was deceased, and there was no evidence that she had had any prior contact with Smith. The State cites no authority for the proposition that a trial court can impose a no contact provision in the judgment and sentence under these facts.[5]

---

[4] Although the legislature amended this statute in 2021 and 2022, we cite to the current version of the statute because these amendments did not alter the relevant subsection.

[5] The State cites only to an unpublished opinion, *State v. Lee*, No. 51633-1-II, slip op. at 7 (Wash. Ct. App. Jan. 28, 2020 (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2051633-1-II%20Unpublished%20Opinion.pdf, and relies on RCW 9.94A.703(3)(b). But *Lee* involved a community custody condition imposed pursuant to RCW 9.94A.703(3)(b), not a no contact provision in the judgment and sentence. *Id.*

Therefore, we conclude that the trial court erred in imposing the no contact provision regarding Rucker-Viera.

## CONCLUSION

We affirm Smith's controlled substance homicide conviction, but we remand for the trial court to strike the no contact provision regarding Rucker-Vieira from Smith's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, J.

GLASGOW, C.J.

---

at 7.  And RCW 9.94A.703(3)(b) addresses only community custody conditions, and the no contact provision here was not imposed as a community custody condition.