IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33648-4-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 33744-8-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MARIO TORRES, | ) | |
| | ) | |
| Appellant. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| MARIO TORRES, | ) | |
| | ) | |
| Petitioner. | ) | |

PENNELL, J. — Mario Torres was convicted of a witness tampering charge involving his minor son. At sentencing, the trial court imposed a five-year no-contact order between Mr. Torres and his son. Because the no-contact order was imposed without adequate consideration of Mr. Torres's fundamental right to parent his son, we remand for reconsideration.

FACTS

Mario Torres is the father of M.T. (born 2003) and N.B. (born 2012). N.B. had been living with his mother, but on the morning of December 22, 2014, he was left in Mr. Torres's care while N.B.'s mother went shopping. M.T. was also with Mr. Torres at the time. On December 23, N.B.'s mother and grandmother took him to receive medical care after he was found unresponsive. N.B. died a few days later. A preliminary investigation of N.B.'s injuries suggested his death was a homicide.

Part of law enforcement's investigation into N.B.'s death involved a forensic interview of M.T. M.T. originally told the interviewer that N.B. was responsive while in Mr. Torres's care and ate some "Chicken McNuggets" during this time. Clerk's Papers (CP) at 8. But M.T. subsequently told the interviewer this was not true. M.T. then related that he heard a loud bang while Mr. Torres was caring for N.B. and N.B. started loudly crying. Mr. Torres later told M.T. he had accidentally stepped on N.B.'s leg causing him to fall and strike the bedpost. M.T. never saw N.B. get up again after this. M.T. told the interviewer that both his parents approached him at his grandmother's home earlier that day and told him to make up a story about N.B. eating Chicken McNuggets, and not mention that N.B. had bumped his head. Mr. Torres allegedly told M.T. to "make up lies." *Id.*

2

The police talked to Mr. Torres the day after M.T's interview. After being advised of his *Miranda*[1] rights, Mr. Torres denied injuring N.B. but admitted N.B. fell and struck his head on a bedpost. Mr. Torres also admitted he did not want M.T. to talk to the police and had a private conversation with him to outline what M.T. would say. Mr. Torres claimed he told M.T. to tell the truth and say Mr. Torres did not cause the injuries to N.B. He did not offer any specific details on what M.T. was told.

The State charged Mr. Torres with one count of witness tampering under RCW 9A.72.120(1)(c). The case progressed toward trial and a CrR 3.5 hearing was set for February 11, 2015. The hearing was not held, but the parties stipulated to a continuance on February 11 that pushed the CrR 3.5 hearing to February 25 the trial date out to late March. Mr. Torres ultimately entered an *Alford*[2] plea on February 25. His case then proceeded directly to sentencing.

During the sentencing colloquy, counsel for the State requested a six-month no-contact order between Mr. Torres and his son, which would be subject to renewal. Defense counsel asked the court not to impose a no-contact order, citing the active role Mr. Torres played in his son's life. The court ultimately imposed a five-year no-contact

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

3

order, prohibiting Mr. Torres from all contact with M.T. except by written mail that first

must be screened by M.T.'s mother. Mr. Torres also received a sentence of six months

and $1,960 in legal financial obligations (LFOs).[3]

ANALYSIS

RCW 9.94A.505(9) authorizes a trial court to impose crime related prohibitions as

sentencing conditions. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).[4]

Conditions interfering with fundamental rights, such as the right to a parent-child

relationship, must be "sensitively imposed" so they are "reasonably necessary to

accomplish the essential needs of the State and public order." *In re Pers. Restraint of*

*Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010) (internal quotation marks omitted)

(quoting *Warren*, 165 Wn.2d at 32). Although we review a trial court's decision to

impose sentencing conditions for abuse of discretion, discretion is abused if the trial court

employs the wrong legal standard. *Rainey*, 168 Wn.2d at 374-75; *see also State v. Lord*,

161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

At sentencing, the trial court imposed a five-year no-contact order, prohibiting

---

[3] Specifically, the trial court imposed a $500 victim assessment, $860 in court costs, a $500 fine, and a $100 deoxyribonucleic acid (DNA) collection fee.

[4] The *Warren* court cites to the former RCW 9.94A.505(8) (2001), but the relevant provision has been recodified as RCW 9.94A.505(9) (LAWS of 2015, ch. 81, § 1).

almost all contact between Mr. Torres and his son. In so doing, the court failed to acknowledge Mr. Torres's fundamental right to parent his child or explain why a five-year prohibition on all personal contact was reasonably necessary to further the State's interests. This was error, even under the deferential abuse of discretion standard. *Rainey*, 168 Wn.2d at 374-75; *State v. Howard*, 182 Wn. App. 91, 100-01, 328 P.3d 969 (2014). While the trial court certainly can impose a no-contact order to advance the State's fundamental interests in protecting children, it must do so in a nuanced manner that is sensitive to the changing needs and interests of the parent and child. *Rainey*, 168 Wn.2d at 378.

The State suggests we can infer the reasons for the court's no-contact order from the record. We disagree. The record before us is scant. The trial judge did not explain why he decided to impose a no-contact order that was 10 times longer than what was requested by the State. We are unable to discern the court's likely reasoning from the limited information presented. It is the trial court's duty to balance the competing interests impacted by a no-contact order. This is a fact intensive exercise that must, at first instance, be done in the trial court, not the appellate court.

Because the trial court's decision to impose a no-contact order was not guided by the analysis required by our case law, we remand for reconsideration of the no-contact

5

order. On remand, the trial court shall first address whether a no-contact order remains reasonably necessary in light of the State's interests in protecting M.T. from harm. If it is, then the court shall endeavor to narrowly tailor the order, both in terms of scope and duration. When it comes to the order's scope, the court shall consider less restrictive alternatives, such as supervised visitation, prior to restricting all personal contact between Mr. Torres and his child. *See, e.g., State v. Ancira*, 107 Wn. App. 650, 654-55, 27 P.3d 1246 (2001). In addition, the court's order should recognize that "what is reasonably necessary to protect the State's interests may change over time." *Rainey*, 168 Wn.2d at 381. Accordingly, the court shall consider whether the scope of the no-contact order should change over time. The court shall also reconsider whether the ultimate length of the no-contact order remains appropriate.

On remand, the trial court should keep in mind that a sentencing proceeding is not the ideal forum for addressing parenting issues. *Ancira*, 107 Wn. App. at 655. Our juvenile and family courts are better equipped to resolve custody questions, including whether restrictions should be placed on parent-child contact. *See* chs. 13.34, 26.09, 26.10, 26.26 RCW. Outside the context of the procedural protections provided in dependency and child custody cases, our legislature has directed that a parent-child no-contact order should not last longer than one year, unless specifically renewed.

6

RCW 26.50.060(2). This legislative context should be taken into account when determining the necessity of a no-contact order on remand.

The panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040. It is so ordered.

## LFOs

Mr. Torres's final argument on direct appeal is that the trial court failed to conduct an individualized inquiry prior to imposing LFOs. No objection was raised in the trial court. Nevertheless, because we are remanding this matter for reconsideration of the no-contact order, we also remand for an individualized inquiry into whether Mr. Torres has the ability to pay discretionary LFOs as contemplated by *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

## PERSONAL RESTRAINT PETITION

*Motion to vacate plea*

In his personal restraint petition, Mr. Torres moves to withdraw his guilty plea on the basis of newly discovered evidence. The "new evidence" is Mr. Torres's recantation of his own prior statement. This is not the type of evidence that warrants relief. *See*

7

CrR 7.8(b)(2). Mr. Torres knew, at the time of his plea, whether his statement prior to arrest was voluntary and truthful. He had all the information necessary to decide whether to challenge his statement or proceed with his plea. He chose the latter. While Mr. Torres may now regret his decision, that is not a basis for upending his plea. *In re Pers. Restraint of Clements*, 125 Wn. App. 634, 645-46, 106 P.3d 244 (2005).

*Ineffective assistance of counsel*

Mr. Torres makes three claims of ineffective assistance of counsel: (1) his attorney labored under a conflict of interest, (2) failure to investigate the case, and (3) failure to seek suppression of Mr. Torres's statement to law enforcement. To establish ineffective assistance of counsel, a defendant must show that counsel's (1) performance was deficient, and (2) the errors were serious enough to prejudice the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Mr. Torres has not met this burden.

The record is insufficient to permit review of Mr. Torres's first two claims. The criticisms that Mr. Torres lodges against his trial attorney have to do with disagreements as to case strategy, not a conflict in counsel's duty of loyalty. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 722, 16 P.3d 1 (2001). With respect to counsel's investigation, Mr. Torres has not submitted sufficient facts to demonstrate that counsel failed to talk to

various witnesses. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992).

As to the final argument, the record confirms that trial counsel did originally plan to challenge Mr. Torres's statement to police. Defense counsel twice scheduled a CrR 3.5 hearing, but ultimately the hearing was canceled to permit entry of Mr. Torres's plea. Successfully challenging a pretrial statement on the basis of police coercion is a difficult task. Mr. Torres cannot show that the decision to enter a plea in lieu of proceeding with the suppression hearing was not strategic. *State v. McFarland*, 73 Wn. App. 57, 71, 867 P.2d 660 (1994).

*Allegation of illegal search and seizure*

The final argument raised in Mr. Torres's personal restraint petition pertains to an alleged illegal search. Mr. Torres has the burden to show facts supporting his allegation in his petition. *See In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17-18, 298 P.3d 872 (2013). He has not done so. We therefore reject his arguments.

## APPELLATE COSTS

In his opening brief, Mr. Torres requests that we not award costs to the State, in the event it substantially prevails on appeal. He has also filed a motion to extend time to file a continued indigency report. The motion to extend time is denied as moot. We grant

9

No. 33648-4-III; 33744-8-III
*State v. Torres*

the request to not award costs regardless of indigency, as Mr. Torres has substantially

prevailed on the issues raised in his direct appeal.

## CONCLUSION

Mr. Torres's conviction is affirmed. This matter is remanded for reconsideration

of the no-contact order between Mr. Torres and M.T. and the imposition of discretionary

LFOs.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Siddoway, J.

10