FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2019 JAN 14 AM 8: 49



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76650-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| AARON TENG-HAO CHUNG, | ) | |
| | ) | FILED: January 14, 2019 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Aaron Chung appeals his conviction for third degree assault of a child on the grounds that he received ineffective assistance of counsel. Because his attorney's decision not to request a lesser included offense instruction was a legitimate trial tactic, Chung does not establish ineffective assistance.

Chung also appeals the portion of his sentence imposing a five-year no-contact order prohibiting him from contacting his three children, K.C., L.C., and J.C. Because the record does not support the scope or duration of the order as to K.C. or L.C., we remand for resentencing.

J.C. was the victim of her father's crime, and evidence in the record supports imposing a no-contact order as to her. But the court should also take the opportunity on resentencing to address more precisely the potential circumstances for revisiting the scope or duration of the no-contact order for J.C.

Therefore, we affirm Chung's conviction and remand for resentencing.

FACTS

Chung and Stacie Ly, his ex-wife, have three children together. After their divorce, Chung saw his children every other weekend. Chung lives with his parents, who help care for his children when they stay with him.

In February 2016, Chung's children were spending the weekend with him at their grandparents' house. J.C., Chung's daughter, was six years old at the time, and K.C. and L.C., Chung's two sons, were three and four. J.C. was playing with her brothers when Chung took her aside into a hallway and claimed Ly stole money from him. J.C. denied it and called Chung a liar. Chung responded by punching his daughter above her right eye, causing her to fall backward and hit her head on the hardwood floor. After J.C. got back to her feet, Chung used a "very low and quiet" voice and said, "Don't tell anyone."[1]

After Ly brought J.C. to a doctor because her daughter was acting unusually, the doctor diagnosed J.C. with a head injury and a concussion. The doctor reported Chung to Child Protective Services.

The State charged Chung with second degree assault of a child. At trial, the State also requested a lesser included offense instruction on third degree assault of a child. The jury found Chung not guilty of second degree assault and convicted him of the lesser included charge. In addition to 10 days in jail and 10 days of community service, the court prohibited Chung from having any contact with his children for five years, subject to modification and review based upon

---

[1] Report of Proceedings (RP) (Jan. 23, 2017) at 232.

2

future progress in family court proceedings.

Chung appeals.

## ANALYSIS

### 1. Ineffective Assistance of Counsel

We review de novo a claim of ineffective assistance of counsel.[2] The defendant bears the burden of proving ineffective assistance of counsel.[3] First, the defendant must prove his counsel's performance was deficient.[4] Second, the defendant must prove his counsel's deficient performance prejudiced his defense.[5] Failure to prove either deficiency or prejudice ends the inquiry.[6]

A defendant must overcome "'a strong presumption that counsel's performance was reasonable.'"[7] When defense counsel's decisions "can be characterized as legitimate trial strategy or tactics, performance is not deficient."[8] Although questions of ineffective assistance of counsel do not lend themselves to per se rules, the decision to include or exclude lesser included offense instructions "is a tactical decision for which defense attorneys require significant latitude."[9]

---

[2] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[3] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[4] Id. at 32 (quoting Strickland, 466 U.S. at 687).

[5] Id. at 33 (quoting Strickland, 466 U.S. at 687).

[6] State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017).

[7] Grier, 171 Wn.2d at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

[8] Kyllo, 166 Wn.2d at 863.

[9] Grier, 171 Wn.2d at 34, 39.

Chung contends his counsels'[10] performance was deficient because they did not request a lesser included offense of fourth degree assault after the court agreed to provide an instruction on third degree assault. But the court granted the State's request for the lesser included instruction only after both sides had rested and were preparing for closing argument. Chung's theory of the case up to that point was that he did not punch his daughter.[11] And the only testifying eyewitness to the assault was J.C. herself. By contrast, J.C.'s grandfather testified that "nothing happen[ed]," and other testimony established that the grandfather was either in the room with J.C. or in an adjacent room at the time of the alleged assault.[12] Chung also cross-examined the doctor who diagnosed J.C.'s concussion about whether ordinary play activities could cause a concussion, and he cross-examined J.C. about whether she liked playing on monkey bars and doing handstands.

Rather than dramatically shifting tactics in the closing hours of trial, Chung's attorneys made the legitimate tactical decision to continue to pursue their established strategy.[13] Because Chung does not demonstrate his trial counsels'

---

[10] Chung was represented jointly at trial by two attorneys.

[11] See, e.g., RP (Jan. 23, 2017) at 138-43 (Chung's opening argument contending the State's theory does not hold up to scrutiny).

[12] RP (Jan. 23, 2017) at 185; RP (Jan. 24, 2017) at 519. J.C. gave conflicting accounts about whether J.C.'s grandfather was in the room or in an adjacent room when the assault occurred. Compare RP (Jan. 23, 2017) at 185 (police officer testified to J.C. saying her grandfather was standing right behind her father when the assault occurred), with RP (Jan. 23, 2017) at 244 (J.C. testified her grandparents were in an adjacent room).

[13] Moreover, one of Chung's attorneys argued against providing the instruction on third degree assault because he was "afraid of a compromised

performance was deficient, he cannot show he received ineffective assistance of counsel.

## 2. No-Contact Order

We review sentencing conditions for abuse of discretion.[14] A court abuses its discretion when imposing a crime-related prohibition if it employs the wrong legal standard.[15] When a prohibition affects a constitutional right, the extent to which it does is a legal question subject to strict scrutiny.[16]

RCW 9.94A.505(9) gives courts the power to impose "crime-related prohibitions and affirmative conditions." "Crime-related prohibitions" are "directly relate[d] to the circumstances of the crime" for which the defendant was convicted.[17] A no-contact order may be a crime-related prohibition.[18] A no-contact order can prohibit any contact between a person and that person's children because the State has a compelling interest in protecting children and preventing physical or psychological harm to them.[19]

---

verdict," wherein the jury would decide to convict Chung of a lesser offense after being worn down by many hours of deliberation. RP (Jan. 25, 2017) at 585. The jury deliberated for almost three days before convicting Chung.

[14] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

[15] In re Pers. Restraint of Rainey, 168 Wn.2d 367, 375, 229 P.3d 686 (2010).

[16] Id. at 374.

[17] RCW 9.94A.030(10).

[18] Rainey, 168 Wn.2d at 376.

[19] State v. Howard, 182 Wn. App. 91, 101, 328 P.3d 969 (2014); see Rainey, 168 Wn.2d at 378 ("Washington law recognizes that the State has a compelling interest in protecting children from witnessing domestic violence.").

But prohibitions that interfere with fundamental rights, such as the right to parent one's children, must be "sensitively imposed," "narrowly drawn," and carefully reviewed.[20] "There must be no reasonable alternative way to achieve the State's interest."[21] Remand is required when either the scope or the duration of a no-contact order impinging a fundamental right is not "reasonably necessary to accomplish the essential needs of the State and public order."[22]

In State v. Torres, the trial court imposed a five-year no-contact order prohibiting a father from contacting his minor son except by mail screened by his son's mother.[23] The court imposed the order after the father was convicted of witness tampering for ordering his son to lie to the police about how the father's other child died.[24] Division Three of this court remanded for resentencing because the trial court "failed to acknowledge [the father's] fundamental right to parent his child or explain why a five-year prohibition on all personal contact was reasonably necessary to further the State's interests."[25]

Similarly, this court remanded for resentencing in State v. Ancira, where the trial court entered a five-year no-contact order prohibiting all contact between the defendant and his wife and children after he violated an existing no-contact order

---

[20] Warren, 165 Wn.2d at 32, 34.

[21] Id. at 34-35.

[22] Id. at 32; Howard, 182 Wn. App. at 101; see Rainey, 168 Wn.2d at 378-82 (remanding for resentencing when a no-contact order had a reasonable scope but unreasonable duration).

[23] 198 Wn. App. 685, 687, 689, 393 P.3d 894 (2017)

[24] Id. at 687-88.

[25] Id. at 689.

that covered only the wife.[26] The trial court imposed the order to prevent the children from witnessing any more domestic violence.[27] This court remanded because "the State has failed to demonstrate that this severe condition was reasonably necessary to prevent the children from witnessing domestic violence."[28] Although "some limitations on [the defendant's] contact with his children, such as supervised visitation, might be appropriate," there was no evidence justifying a total restriction on all contact for five years.[29]

By contrast, in State v. Corbett, Division Two of this court upheld a no-contact order imposed on a sexual offender that restricted his right to parent his children.[30] The offender sexually abused his stepdaughter repeatedly, and the no-contact order restricted the offender's ability to contact any minors, including his biological children.[31] However, the no-contact order allowed for supervised visits with his biological children subject to approval of the Department of Corrections and a sexual deviancy treatment provider.[32] Division Two held the no-contact order was a "valid crime-related prohibition" that did not "unduly burden" the offender's "fundamental parenting rights."[33]

---

[26] 107 Wn. App. 650, 652-54, 27 P.3d 1246 (2001).

[27] Id. at 653.

[28] Id. at 654.

[29] Id. at 655.

[30] 158 Wn. App. 576, 601, 242 P.3d 52 (2010).

[31] Id. at 583-84, 601.

[32] Id. at 601 n.14.

[33] Id. at 601.

7

Chung is subject to a no-contact order for each of his children, and those orders prohibit him from contacting them through any means and from knowingly coming within 1,000 feet of them, their home, or their school.[34] Those orders will expire on March 22, 2022, unless removed earlier.

At sentencing, the court briefly addressed its no-contact order:

> No-contact order with J.C., K.C., and L.C. for a period of five years. That can be reviewed if and when the family court decides to make modifications in the no-contact orders that are admitted entered in that venue. I'm not inclined to just wholesale say we'll follow what they do, because I don't always know why they're doing what they do. But I would certainly be willing to review it once they see fit to change the circumstances. Because I think you're right, [defense counsel]. They're going to have a better handle on the details than we will.[35]

The court does not otherwise explain the rationale behind the scope of its order and the record does not contain any documents or filings with the family court either pre- or post-trial.

Because the court's order infringes on Chung's fundamental right to parent, we consider whether the scope and duration of the order are directly related to his crime, narrowly drawn, and reasonably necessary to uphold the State's interests.[36]

The jury found Chung assaulted J.C. Following the assault, J.C. "woke up on many nights sweating, shaking, and sobbing uncontrollably" because she thought she "saw daddy's angry face and worried that he was going to kill her."[37]

---

[34] CP at 122; 144-49.

[35] RP (Mar. 22, 2017) at 936. We note that Chung's attorney requested the language allowing modification based on the family court's decisions.

[36] RCW 9.94A.030(10), .505(9); Warren, 165 Wn.2d at 34-35.

[37] RP (Mar. 22, 2017) at 916.

Ly testified that J.C. has "displayed more self-confidence" and had fewer nightmares after a family court imposed a no-contact order on Chung during the year between the assault and trial.[38] J.C. suffered both physical and psychological harm from her father's assault, and her mother told the court that J.C. has benefitted from Chung's absence. Because Chung's crime relied on unsupervised physical proximity with J.C. and he tried to silence her following the assault, we agree that restrictions on Chung's right to parent her are directly related to his crime. The court did not abuse its discretion by imposing a no-contact order on Chung for J.C.

The court also imposed no-contact orders on Chung for his two other children. The court faced directly conflicting testimony about Chung's treatment of his sons. J.C. testified that her brothers attacked Chung after the assault and that he responded by squeezing them until they could not breathe and demanding that they apologize for attacking him. But her grandfather's testimony contradicts this, and no other testimony indicates Chung assaulted his other children.[39] Unlike J.C., the jury made no findings about K.C. and L.C. And the court made no findings of fact or observations about whether J.C. was more credible than her grandfather or whether the court could reasonably infer a threat to K.C. and L.C.

---

[38] Id. at 917-18.

[39] Ly testified at sentencing that K.C. and L.C. returned from an overnight at Chung's on one occasion with multiple facial abrasions, but she also admitted she did not know how they were injured.

Sentencing conditions that restrict fundamental rights are appropriate only when there is "no reasonable alternative way to achieve the State's interest."[40] As in Torres and Ancira, nothing shows the trial court considered whether any less restrictive options could uphold the State's interest in protecting K.C. and L.C. from harm. Although the court's oral ruling correctly recognizes that family courts are better positioned than criminal courts to evaluate family dynamics,[41] the court provided only for possible reevaluation of the no-contact order if a family court modified the no-contact orders it had imposed. Even assuming that some restrictions on Chung's ability to contact K.C. and L.C. are justified, there is nothing in the record to let us discern the reason for these broad restrictions.[42]

In addition, the trial court did not explain its rationale for the five-year duration of its order. The court noted Chung's need to "salvage [his] relationship with [his] kids,"[43] and how "since the children are so young at this point, Mr. Chung has a lot of work to do to repair the damage that was done to these kids and his— more importantly—his relationship with them."[44] But the court did not reconcile how prohibiting Chung from having any contact with his children for five years would improve his relationship with them. Nor did the court consider a shorter duration or benchmarks Chung could meet to regain his rights over time.

---

[40] Warren, 165 Wn.2d at 34-35.

[41] Torres, 198 Wn. App. at 690-91; Ancira, 107 Wn. App. at 655.

[42] Even in Torres, where the father was being investigated for killing one son and tampered with the other son's testimony to hamper the investigation, the trial court let the father contact his son by mail. 198 Wn. App. at 687-89.

[43] RP (Mar. 22, 2017) at 935.

[44] Id. at 933-34.

10

As in Torres, "[w]e are unable to discern the court's likely reasoning from the limited information presented. It is the trial court's duty to balance the competing interests impacted by a no-contact order."[45] Imposing sentencing restrictions is a "fact intensive exercise" better conducted by the trial court than an appellate court.[46] The trial court is not required to make findings of fact when imposing a no-contact order, but it should articulate the rationale and considerations behind its ruling.

Consistent with Torres, the trial court should first address whether no-contact orders are still reasonably necessary for K.C. and L.C. in light of the State's interests in protecting them from harm. If the orders are still necessary, then the court should "endeavor to narrowly tailor the order, both in terms of scope and duration."[47] This must include consideration of less restrictive alternatives to a total ban on contact between Chung and his children. Regarding the no-contact order for J.C., the court should articulate reasons for whatever duration the court orders.

Chung makes a variety of arguments in his statement of additional grounds that his conviction should be vacated.

First, Chung argues insufficient evidence supported his conviction. Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State and drawing all inferences in

---

[45] Torres, 198 Wn. App. at 690.

[46] Id.

[47] Id.

its favor, could find the elements of the charged crime beyond a reasonable doubt.[48] Credibility determinations are reserved solely for the trier of fact and are not subject to review.[49] When viewing the facts discussed above in a light most favorable to the State, sufficient evidence supported Chung's conviction.[50]

Second, Chung claims a technical glitch during his father's testimony that required his father testify again the following day to produce a record, thereby prejudicing the jury. But Chung fails to explain how exposing the jury twice to the same defense witness being asked the same questions by defense counsel would result in prejudice to the defendant.

Third, Chung argues he is entitled to a new trial due to prosecutorial misconduct. Chung contends the prosecutor prejudiced his trial by misstating the definition of "reasonable doubt" and by bringing up new information, both during closing argument. A defendant claiming prosecutorial misconduct has the burden of showing that the prosecutor's comments were improper and that the comments were prejudicial.[51] The "'failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an

---

[48] State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401 P.3d 19, affirmed, 189 Wn.2d 243 (2017).

[49] Id. at 266.

[50] We note that J.C. herself testified to her father punching her, and that the doctor who treated and diagnosed J.C. testified to her injuries and to J.C. reporting that Chung caused them.

[51] Warren, 165 Wn.2d at 26.

admonition to the jury.'"[52] Here, Chung failed to object to any of the comments he now claims prejudiced his trial. Because none of the remarks by the prosecutor could have caused "enduring and resulting prejudice," Chung does not demonstrate any misconduct.

We decline to consider Chung's remaining contentions. They would be better addressed in a personal restraint petition either because he relies on information outside the appellate record or because he fails to make objections specific enough to allow for review.

Accordingly, we affirm Chung's conviction and remand for resentencing.

WE CONCUR:

---

[52] State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).