IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

KEVIN DOUGLAS MCCLELLAND,

Appellant.

No. 80705-6-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, A.C.J. — Kevin McClelland pleaded guilty to felony harassment and misdemeanor violation of a court order. As a condition of his sentence, the trial court ordered that he have no contact with his child for five years. Because the prohibition was imposed without adequate consideration of McClelland's fundamental right to parent his child, we remand for reconsideration.

## FACTS

McClelland and K.D. are the parents of K.D.D., born in March 2019. A July 2019 no-contact order barred McClelland from coming within 1,000 feet of K.D. but allowed him to communicate with her in writing.

On August 3, 2019, McClelland and K.D. arranged through social media for the return of some of McClelland's property located in K.D.'s home. K.D. packed up McClelland's belongings and placed them in the trunk of her car. K.D. then sat

in the car with K.D.D. and waited for McClelland. Sometime thereafter McClelland walked up to K.D.'s car, opened the front passenger door, and asked her to drive him to Portland. K.D. refused, but offered to let McClelland get his things out of the trunk. McClelland slammed the car door and kicked the rear bumper.

McClelland then walked up to the locked front door of K.D.'s home and forced the door open "with one swift kick." K.D. was "terrified for the safety of her 13-year-old son who was asleep inside" the home and "did not know if she should run after McClelland to protect her son or take off to get" K.D.D. out of the area. McClelland next turned around, started walking toward K.D., and said: "I am going to kill you and all your kids!" He then left the area.

K.D. called 911 and responding police officers located McClelland nearby. While speaking to the officers, McClelland admitted that he "went up to the front door and kicked it in anger" and had threatened to kill K.D. and the kids "last night, not today."

The State charged McClelland with domestic violence felony harassment, domestic violence misdemeanor violation of a court order, and domestic violence third degree malicious mischief. McClelland pleaded guilty to the felony harassment and misdemeanor court order violation charges in exchange for the dismissal of the malicious mischief charge.

The parties jointly recommended a residential drug offender sentencing alternative (DOSA), completion of a domestic violence treatment program, and a no-contact order protecting K.D. and her older child, M.D. The State also recommended a no-contact order for K.D.D. which McClelland "strongly" opposed.

Emphasizing his fundamental right to parent, McClelland asked the trial court not to impose a no-contact order prohibiting contact with K.D.D. Alternatively, he proposed that "[i]f the court were to issue such an order, the order should permit [him] to have contact with [K.D.D.], so long as a third party is present, until or unless a Family Court order commences and supersedes this order."

At sentencing, the trial court first heard from a victim's advocate who read a lengthy statement written by K.D. Next, the court addressed McClelland's position regarding the imposition of a no-contact order and inquired: "Couldn't it be argued that . . . [you] put the five-month-old baby in danger by forcing" K.D. to choose between protecting K.D.D. or her son inside the home? McClelland responded that "there was not a choice that needed to be made between protecting one child versus another," "there's not an actual threat of harm specifically or any actions [he took] towards the children" and, based on the charges to which he pleaded guilty, there was insufficient evidence to find that prohibiting all contact was reasonably necessary to protect K.D.D. The court did not further inquire into or discuss what, if any, conditions were necessary to protect K.D.D. from harm.

The trial court adopted the parties' joint sentencing recommendations, imposed a no-contact order prohibiting McClelland from contacting K.D.D., but expressed a willingness to modify the no-contact order during its oral ruling:

> If and when Mr. McClelland completes the domestic violence treatment program or Thinking For A Change, or based on any other circumstances, the Court will consider modifying the no contact order, but I find, based upon the facts recited in the Probable Cause Certification, that Mr. McClelland's actions did place K.D.D. in danger in that his actions forced [K.D.] to choose between protecting her 13-year-old son and abandoning K.D.D. in the car, or staying with K.D.D. and fleeing . . . versus abandoning her son in the townhouse.

The court then entered a judgment and sentence that ordered McClelland to have no contact with K.D.D. for five years as a condition of sentence. The court also entered a separate five-year domestic violence no-contact order pursuant to chapter 10.99 RCW, which prohibits McClelland from coming within 1,000 feet of K.D.D.'s home and school. The no-contact orders do not contain any exceptions beyond service of process of court documents through a third party.

On appeal, McClelland challenges only the imposition of the no-contact orders protecting K.D.D.

## ANALYSIS

McClelland contends that the trial court erred by entering orders that prevent him from having any contact with K.D.D. for five years, interfering with his fundamental right to parent. Although the facts of this case may justify the no-contact orders the trial court entered, the trial court's analysis of the necessity of a ban on all contact for five years is insufficient. We therefore remand for further analysis and factual findings.

## Standard of Review

As part of any sentence, a trial court is authorized to impose and enforce crime-related prohibitions. RCW 9.94A.505(9); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).[1] "Crime-related prohibitions" are orders directly related to "the circumstances of the crime" for which the offender has been convicted, and may include orders prohibiting contact. RCW 9.94A.030(10). Generally, we

---

[1] The Warren court cites to the former RCW 9.94A.505(8) (2001), but the relevant provision has been recodified as RCW 9.94A.505(9) (LAWS of 2015, ch. 81, § 1).

review sentencing conditions for abuse of discretion. <u>Warren</u>, 165 Wn.2d at 32. "A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard." <u>In re Pers. Restraint of Rainey</u>, 168 Wn.2d 367, 375, 229 P.3d 686 (2010) (citing <u>State v. Lord</u>, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007)).

Careful review, however, is required when sentencing conditions "interfere with a fundamental constitutional right." <u>Warren</u>, 165 Wn.2d at 32. Natural parents have a fundamental right in the "care, custody, and management" of their children. <u>Santosky v. Kramer</u>, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). "Conditions that interfere with fundamental rights must be reasonably necessary to accomplish the essential needs of the State and public order." <u>Warren</u>, 165 Wn.2d at 32. Such conditions "must be narrowly drawn" and "[t]here must be no reasonable alternative way to achieve the State's interest." <u>Id.</u> at 34-35. Thus, a trial court may not impose a no-contact order between a parent and child without addressing, on the record, whether the order is reasonably necessary in scope and duration to prevent harm to the child. <u>Rainey</u>, 168 Wn.2d at 381-82; <u>State v. DeLeon</u>, 11 Wn. App.2d 837, 840-41, 456 P.3d 405 (2020).

<u>No-Contact Orders for K.D.D.</u>

Here, the trial court prohibited all contact between McClelland and K.D.D. for five years. The trial court provided some explanation for its decision to impose the no-contact orders, stating that McClelland's "actions did place K.D.D. in danger in that his actions forced" K.D. to choose between protecting her two children. But the trial court did not explain on the record how the scope and duration of the no-

contact orders were reasonably necessary to prevent harm to K.D.D. or whether it considered less restrictive alternatives. Entering these orders without considering such factors in the record was an abuse of discretion.

The State contends, in view of the entire record and K.D.'s "reported shocking abuses" of K.D.D. at sentencing,[2] the trial court acted within its discretion by ordering that McClelland have no-contact with K.D.D. But "[i]t is the trial court's duty to balance the competing interests impacted by a no-contact order," which is "a fact intensive exercise that must, at first instance, be done in the trial court, not the appellate court." State v. Torres, 198 Wn. App. 685, 690, 393 P.3d 894 (2017). The trial court must explain the facts on which it relied for imposing a complete ban on all contact with K.D.D. for a five year period.

The State also argues that "the five-year length of the [no-contact] order[s] was reasonable in light of the fact that the trial court agreed to modify it if McClelland made progress" in domestic violence treatment. Although the trial court indicated in its oral ruling an openness to modifying the no-contact orders if McClelland completed treatment, the judgment and sentence does not reflect this

---

[2] K.D.'s victim-impact statement that was read at sentencing contains several unproven allegations of McClelland physically abusing her and K.D.D. The State cites them as facts the trial court considered when imposing the no-contact orders. McClelland asks us to either strike or disregard the State's reliance on K.D.'s unproven allegations of abuse, as contrary to the parties' plea agreement and the real facts doctrine. McClelland is correct.

During sentencing, the trial court "may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2). Under the "real facts" doctrine, therefore, a defendant may not be sentenced for a crime the State could not or chose not to prove. State v. Randoll, 111 Wn. App. 578, 584, 45 P.3d 1137 (2002) (citation omitted). Here, the parties stipulated that the "real and material facts" to be considered at sentencing were only those set forth in the certification of probable cause and prosecutor's summary. After the court heard K.D.'s statement, McClelland "refocused" the court's attention stating that "there is no allegation of harm" to K.D. or the children in this case. Because the parties did not stipulate to the unproven allegations as real facts, we decline to consider them on appeal.

ruling. A judgment and sentence controls over any apparent inconsistency with the court's earlier oral ruling. State v. Mallory, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966) ("A trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.").

### Remand Instructions

On remand, the trial court should address on the record the scope and duration of the no-contact orders under the "reasonably necessary" standard. Rainey, 168 Wn.2d at 381-82. The trial court should also consider whether the no-contact orders may be subject to further orders entered by family or juvenile courts. State v. Ancira, 107 Wn. App. 650, 655, 27 P.3d 1246 (2001); Torres, 198 Wn. App. at 690-91 (2017) (observing that "[o]ur juvenile and family courts are better equipped to resolve custody questions, including whether restrictions should be placed on parent-child contact.").

As to the orders' duration, "our legislature has directed that a parent-child no-contact order should not last longer than one year, unless specifically renewed" and "[t]his legislative context should be taken into account when determining the necessity of a no-contact order on remand." Torres, 198 Wn. App. at 691 (citing RCW 26.50.060(2)).

We remand for the trial court to reconsider its imposition of the no-contact orders consistent with this opinion.

Andrus, A.C.J.

WE CONCUR:

Chun, J.                    Appelwick, J.