IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85910-2-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER ERVIN MASTIN, | |
| Respondent. | |

BOWMAN, J. — Christopher Ervin Mastin appeals his conviction for second degree child molestation. Mastin argues the trial judge commented on the evidence by using the victim's initials in its to-convict instructions to the jury. Mastin also challenges the trial court's orders prohibiting all contact with his minor children, requiring permission to engage in sexual conduct, and imposing several legal financial obligations (LFOs). We affirm Mastin's conviction but remand for reconsideration of the scope of the order prohibiting contact with his children, to clarify whether the sexual conduct prohibition applies to his marriage, and to strike the victim penalty assessment (VPA), DNA collection fee, and community supervision fees.

FACTS

Mastin and Octavia Dowdell began dating in Spokane as teenagers. In high school, Dowdell gave birth to their son, J.M. In 2010, Mastin, Dowdell, and J.M. moved to Tacoma with Dowdell's younger sister, J.T., and their mother, Teresa Green. J.T. was around six years old.

The family lived in Tacoma for several years.[1] Mastin and Dowdell were no longer in a romantic relationship, but they continued to live together with J.T. and J.M. Dowdell worked two jobs and relied on Mastin for childcare. In 2014, J.T. moved back in with Green. Then, in 2020, J.T. disclosed to Dowdell and Green that Mastin had sexually assaulted her several times between 2013 and 2017 when she was 10 to 13 years old. The family contacted law enforcement.

In September 2020, the State charged Mastin with two counts of first degree child molestation and one count of second degree rape of a child. At trial, the State amended the information, removing one count of second degree rape of a child and adding one count of second degree child molestation. J.T. testified at trial and the parties referred to her by her full name. But the State proposed to-convict jury instructions for each count that referred to J.T. by only her initials. The trial court gave the proposed instructions without objection.

The jury convicted Mastin of second degree child molestation and acquitted him on the other two counts. The trial court imposed a high-end standard-range sentence of 20 months. It also ordered that Mastin's treatment provider approve of any sexual contact in a relationship and that he have no contact with minor children, including his biological children.[2] Finally, the court imposed a $500 VPA, a $100 DNA collection fee, and community supervision fees.

---

[1] In 2011, Green moved into her own apartment. J.T. continued to live with Mastin, Dowdell, and J.M.

[2] Mastin married in 2017. At the time of sentencing, they had a one-year-old, and his wife was pregnant with their second child.

Mastin appeals.

ANALYSIS

Mastin argues that the trial judge commented on the evidence by using J.T.'s initials in its to-convict instructions to the jury. Mastin also challenges the trial court's orders prohibiting all contact with his children, requiring permission to engage in sexual conduct, and imposing several LFOs. We address each argument in turn.

I. Judicial Comment on the Evidence

For the first time on appeal, Mastin argues that the judge commented on the evidence by using J.T.'s initials in the to-convict instructions.[3] We disagree.

We review whether a jury instruction amounts to a judicial comment on the evidence de novo and in the context of the instructions as a whole. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Article IV, section 16 of our state's constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." The purpose of this prohibition on judicial comments on the evidence "is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted." *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999).

A trial court makes an impermissible comment on the evidence when its

---

[3] The State argues Mastin waived this assignment of error because he did not object to the instructions below. But our Supreme Court has held that judicial comments on the evidence constitute manifest constitutional errors that the defendant may raise for the first time on appeal. *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). So, we review his claimed error.

statement "reveal[s] the court's 'attitudes toward the merits of the case' or reflect[s] the court's personal opinion of any disputed issue before it." *State v. Bass*, 18 Wn. App. 2d 760, 804, 491 P.3d 988 (2021) (quoting *Levy*, 156 Wn.2d at 721). Article IV, section 16's prohibition on such comments "forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial." *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). To determine whether a trial court's statement amounts to a comment on the evidence, we "look to the facts and circumstances of the case." *Id.* The fundamental question underlying our analysis is whether the mention of a fact in a jury instruction "conveys the idea that the fact has been accepted by the court as true." *Levy*, 156 Wn.2d at 726. We presume a comment on the evidence is prejudicial, and the State bears the burden of showing no prejudice occurred. *Id.* at 723.

Mastin contends that the use of J.T.'s initials in the to-convict jury instructions was a comment on the evidence because it "conveyed to the jury the court believed [J.T.] was a crime victim who needed protection." We rejected the same argument in *State v. Mansour*, 14 Wn. App. 2d 323, 470 P.3d 543 (2020). In that case, we explained that the name of the alleged victim of child molestation is not a factual issue requiring resolution. *Id.* at 329. So, using initials in a to-convict instruction does not impermissibly instruct a jury that the State has established a fact as a matter of law. *Id.* at 329-30. Nor is it likely a jury will presume that a party is a victim or that the court considers them to be one just

because the court chooses to use their initials in the jury instructions. *Id.* at 330.

Mastin argues we wrongly decided *Mansour*. In support of his argument, Mastin cites several of the same federal cases we considered in *Mansour* that address using pseudonyms throughout the entire civil proceedings. *See Jane Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014) (civil action permitting the plaintiff to use a pseudonym throughout the pretrial process but not at trial); *James v. Jacobson*, 6 F.3d 233, 238-41 (4th Cir. 1993) (considering the use of pseudonyms for parents throughout civil trial to protect identity of their minor children); *Does I-XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-69 (9th Cir. 2000) (allowing pseudonym use throughout class action pretrial proceedings where plaintiffs demonstrated reasonable fear of extraordinarily severe retaliation for filing suit); *Jane Doe v. Rose*, No. CV-15-07503-MWF-JCx, 2016 WL 9150620, at *1 (C.D. Cal. Sept. 22, 2016) (pretrial court order allowing plaintiff to continue to use a pseudonym "until the jury panel is called" at the civil trial). In *Mansour*, we did not find such cases persuasive because, unlike *Cabrera* and *Rose*, the trial court referred to the victim by her full name throughout trial and did not conceal her identity. *Mansour*, 14 Wn. App. 2d at 330.

As in *Mansour*, we do not find Mastin's proffered cases persuasive. J.T. testified at trial, and the parties referred to her by her full name throughout the entire proceedings.

Mastin also tries to analogize the circumstances here to those in *State v. Jackman*, 156 Wn.2d 736, 132 P.3d 136 (2006). But Mastin's reliance on *Jackman* is misplaced. In that case, the State charged the defendant with

several crimes against minors where the age of the victim was an element of the crime. *Id.* at 740, 742-43. So, the victims' ages were factual issues for the jury to resolve. *Id.* at 744. But the trial court included the victims' birth dates in the to-convict instructions, conveying to the jury that those dates had been established as a matter of law. *Id.* Here, J.T.'s name was not an element of a charged crime or an issue of fact in dispute.

Using J.T.'s initials in the to-convict instructions did not convey to the jury that the court believed J.T. to be a "victim who needed protection" and was not a judicial comment on the evidence.

## II. No-Contact Order

Mastin argues the trial court erred by prohibiting all contact with his biological children. According to Mastin, the court should have considered less restrictive alternatives. We agree.

At sentencing, a trial court may impose crime-related prohibitions on conduct directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10), .505(9); *State v. Torres*, 198 Wn. App. 685, 689, 393 P.3d 894 (2017). In general, we review crime-related prohibitions for an abuse of discretion. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "But we more carefully review conditions that interfere with a fundamental constitutional right." *Id.*

Parents have a fundamental liberty interest in the care, custody, and control of their children. *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001). But the State also has a compelling interest in protecting children from

6

physical or mental harm. *Id.* at 653-54. So, a sentencing court can restrict the fundamental right to parent, but only if it is reasonably necessary to prevent harm to a child. *Id.* at 654. Before imposing a no-contact order (NCO) that impacts a person's right to parent, the court must first address whether the condition is reasonably necessary to further the State's interest in keeping the child from harm. *Torres*, 198 Wn. App. at 690. If the court determines the condition is necessary, it must then narrowly tailor the order in both scope and duration. *Id.* This includes considering less restrictive alternatives, such as supervised visitation. *Id.* And the trial court must conduct this inquiry on the record. *State v. DeLeon*, 11 Wn. App. 2d 837, 840-41, 456 P.3d 405 (2020).

At Mastin's sentencing, the trial court ruled it would order no contact with all minor children pending "the results of [a] psychosexual [evaluation], and then we can modify that condition." But the court did not explain on the record why the blanket NCO was reasonably necessary to further the State's interest in protecting Mastin's children from harm. Specifically, the court did not consider less restrictive alternatives or explain why it could not impose those alternatives.

Because the trial court did not engage in the appropriate analysis required by case law, we remand for reconsideration of the order prohibiting contact with Mastin's children.[4] *See Torres*, 198 Wn. App. at 690 (remanding for

---

[4] Mastin also challenges community custody condition 5, which prohibits him from engaging in "[s]exual contact in a relationship" unless his "treatment provider approves of such." According to Mastin, the condition impermissibly interferes with his constitutional right to marriage. The State argues the condition does not apply to Mastin's wife and applies to only "dating relationships." Because we remand on other grounds, we do not reach this issue, and the parties can seek clarification from the sentencing court on remand.

reconsideration of an NCO between a parent and his child where the trial court's decision to impose the order "was not guided by the analysis required by our case law").

III. LFOs

Mastin argues we should remand for the trial court to strike the VPA, DNA collection fee, and community supervision fees from his judgment and sentence because he is indigent. The State concedes each issue. We accept the State's concessions.

Courts may not impose discretionary LFOs on indigent defendants. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). That prohibition applies prospectively when the legislature amends an LFO statute pending appeal. *Id.* at 749. Here, when the court sentenced Mastin in August 2022, the $500 VPA was mandatory under former RCW 7.68.035(1)(a) (2018). And the $100 DNA collection fee was mandatory under former RCW 43.43.7541 (2018). But while Mastin's appeal was pending, the legislature amended both statutes, eliminating these LFOs for indigent defendants. LAWS OF 2023, ch. 449, § 1 (adding language to RCW 7.68.035(4) that the court "shall not impose the [VPA] under this section if the court finds that the defendant, at the time of sentencing, is indigent"), § 4 (eliminating mandatory DNA collection fee from RCW 43.43.7541). The parties do not dispute that Mastin is indigent. We remand for the trial court to strike the $500 VPA and $100 DNA collection fee from Mastin's judgment and sentence.

Finally, Mastin argues we should remand to strike the community

supervision fees because "trial courts no longer have any authority to order this condition." Former RCW 9.94A.703(2)(d) (2018) authorized supervision fees as a waivable condition of community custody. But in 2022, the legislature removed the language in former RCW 9.94A.703(2)(d) that gave the court authority to impose community supervision fees. LAWS OF 2022, ch. 29, §§ 7-8. This statutory amendment went into effect on July 1, 2022. Because the trial court sentenced Mastin on August 19, 2022, that amendment applies here, and we remand to strike the community supervision fees.

We affirm Mastin's conviction but remand for reconsideration of the trial court's order prohibiting contact with his biological children and to clarify whether community custody condition 5 applies to his wife. And we remand for the court to strike the VPA, DNA collection fee, and community supervision fees.

_____ Brumar, J.

WE CONCUR:

_____ Chung, J.

_____ Mann, J.

9