IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86953-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| KEVIN LAURENCE LEWIS, | UNPUBLISHED OPINION |
| Appellant. | |

DÍAZ, J. — Kevin Lewis challenges the trial court's entry of postconviction no-contact orders prohibiting all contact with his three children for life. Although the trial court did not abuse its discretion in determining that some limitation on contact is appropriate, it failed to conduct or complete the analysis required by case law. Accordingly, we remand this matter to the trial court so that it may on the record consider how, if at all, to narrowly tailor the orders, both in terms of (1) its duration, including by recognizing that the State's interest to protect his children may change over time, and (2) its scope, including why less restrictive alternatives than complete termination of the parent child relationship are not appropriate.

I. BACKGROUND

This is Lewis's second appeal. See State v. Lewis, No. 83594-7-I (Wash. Ct. App. Dec. 26, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/835947.pdf. Because we detailed the substantive facts in our opinion in Lewis's first appeal, we do not fully restate them here. Briefly, Lewis hired his cousin, Jerradon Phelps, to kill Lewis's estranged

wife, Amanda Canales, while dissolution proceedings were pending. *See id.*, slip op. at 1, 3. But Canales was out of town on the evening that Phelps carried out Lewis's plan, and Phelps mistakenly shot and killed Canales's sister, who was at Canales's home with Canales and Lewis's three children. *Id.* at 3, 9. A jury convicted Lewis of aggravated first degree murder, *id.* at 1, and the trial court sentenced him to life imprisonment without the possibility of parole. In its judgment and sentence, the trial court ordered that Lewis not have contact with Canales or any of his three children, for life. Additionally, it separately entered lifetime domestic violence no-contact orders protecting Canales and each of the children.

Lewis appealed. He challenged his conviction on various grounds, and he argued that "the imposition of a lifetime no-contact order barring contact with his children should be remanded because the trial court did not sufficiently weigh his fundamental right to parent." *Id.*, slip op. at 61. We affirmed Lewis's conviction but remanded "for the trial court to consider the impact of the no-contact order[s] on Lewis's fundamental right to parent." *Id.* at 2. In doing so, we observed that "[t]o the extent of our record, the trial court did not acknowledge Lewis's fundamental right to parent or address whether the no-contact order[s were] reasonably necessary to prevent harm to the children." *Id.* at 62.

On remand, the State argued that the lifetime no-contact orders should remain in place. Meanwhile, Lewis requested that the trial court allow video visits and letters, and that each no-contact order terminate when the child turned 18 years old. The trial court ultimately left the lifetime no-contact orders intact with no changes, and it made the following pertinent "findings of fact":

2

1.  . . . This Court is familiar with the relevant case law regarding a defendant's constitutional right to parent, which articulates that there needs to be a tie between the crime committed and the children protected. The Court also acknowledges that there is a compelling state interest in the prevention of harm to children.

2.  The Court now considers the duration of the lifetime no contact orders, which was the issue remanded for consideration by the Court of Appeals.

3.  In considering the defendant's fundamental right to parent in light of the facts of this case, the Court must consider that the Defendant set in motion a plan to kill the mother of his children. In doing so, he sought to take away her ability to parent and essentially award custody of these three children to himself through a criminal enterprise.

4.  The fundamental right to be involved in the parenting of your children contains several obligations: being there, providing for them, not causing harm to the children. . . .

5.  Clearly, had [Canales] been murdered as intended that night, these children would have to see their dead mother if they were to ever get out of the house.

6.  The Court finds there was an impact—a foreseeable impact—that would occur from the plan the defendant enacted, and that these children would witness something that no one, especially children, should ever see or be involved in. All of this was caused by the defendant.

7.  The Court finds that these children are victims, and they are directly related to the crime the defendant was convicted of, including the aggravating factors the jury found true. . . .

8.  The Court finds that there is no reasonable alternative than the issuance of lifetime no contact orders protecting these three children from the defendant. There is no other alternative available to this Court when considering the record before it.

9.  The Court finds that lifetime no contact orders protecting these children are appropriate.

The court also made the following conclusions of law:

The Court, having considered the defendant's fundamental right to parent, finds that the lifetime no contact orders protecting [the children] are necessary and appropriate. There is no other alternative or less restrictive means to protect the defendant's biological children in light of the facts presented to this Court at trial. The duration of these no contact orders for life are appropriate, reasonably necessary to protect these children, and have been narrowly tailored to the facts of this case. . . .

> Should [any child] choose to have contact with the defendant at some point in the future, a motion would need to be set in front of this department to determine to what extent that contact would occur. It is up to [the children] to determine whether they want that contact and wish to modify these no contact orders in the future.

Lewis appeals, again challenging the lifetime no-contact orders prohibiting all contact with his children for life.

## II.    ANALYSIS

A trial court may impose crime-related prohibitions as sentencing conditions. RCW 9.94A.505(9); *State v. Torres*, 198 Wn. App. 685, 689, 393 P.3d 894 (2017). But "[c]onditions interfering with fundamental rights, such as the right to a parent-child relationship, must be 'sensitively imposed' so they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *Torres*, 198 Wn. App. at 689 (quoting *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010)). "We review the imposition of crime-related prohibitions under the abuse of discretion standard." *State v. DeLeon*, 11 Wn. App. 2d 837, 840, 456 P.3d 405 (2020). "However, '[m]ore careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right.'" *Id.* (alteration in original) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

"While the trial court certainly can impose a no-contact order to advance the State's fundamental interests in protecting children, it must do so in a nuanced manner that is sensitive to the changing needs and interests of the parent and child." *Torres*, 198 Wn. App. at 689-90. In particular, the court must "first address whether a no-contact order [is] necessary in light of the State's interests in

4

protecting [the child] from harm." *Id.* at 690. "If it is, then the court shall endeavor to narrowly tailor the order, both in terms of scope and duration[,]" and "[w]hen it comes to the order's scope, the court shall consider less restrictive alternatives . . . prior to restricting all personal contact between [a parent] and his child." *Id.* Finally, "the court's order should recognize that 'what is reasonably necessary to protect the State's interests may change over time.'" *Id.* (quoting *Rainey*, 168 Wn.2d at 381). "Accordingly, the court shall consider whether the scope of the no-contact order should change over time [and] whether the ultimate length of the no-contact order [is] appropriate." *Id.* The court must conduct its analysis on the record. *DeLeon*, 11 Wn. App. 2d at 841.

With regard to the first step of the analysis, the trial court did not abuse its discretion insofar as it determined that some form of no-contact order was necessary in light of the State's interest in protecting Lewis's children from harm. As the trial court observed, Lewis sent Phelps to kill his children's mother on an evening when he knew that the children would also be home. Lewis's behavior undoubtedly put his children at substantial risk of harm. And Lewis himself requested only video visitation and written correspondence, effectively conceding that a restriction on in-person contact was reasonably necessary.

However, the trial court's findings and conclusions show that it did not complete the remaining steps of the required analysis. Instead, the court noted that the "relevant case law . . . articulates that there needs to be a tie between the crime committed and the children protected," and held that "the duration of the lifetime no contact orders" was "*the issue*" remanded for consideration by this

5

court.  (Emphasis added.)  In other words, the court's "findings"[1] and analysis focused on whether there was a "tie" between Lewis's conduct—i.e., soliciting Phelps to kill Canales—and the children, and whether that "tie" supported the duration of the no-contact orders.

Nowhere does the court address the *scope* of the orders in its recitation of the law and the issues before it.[2]  And it did not articulate how any contact with Lewis continues to pose a present risk of harm to his children, or why any of his proposed alternatives, such as letter writing, are inappropriate.  *See cf. State v. Cortes Aguilar*, 176 Wn. App. 264, 278, 308 P.3d 778 (2013) (holding that a 10-year no-contact order was not an abuse of discretion where defendant's children, who witnessed their father kill their mother, were "subject to further distress because [their father] continues to place blame on the children's mother, and this action seriously conflicts with the mental health of his children"); *State v. Reedy*, 26 Wn. App. 2d 379, 392, 527 P.3d 156 (2023) (holding that a sentencing court must explore, on the record, whether any viable less restrictive alternatives exist);

---

[1] Lewis correctly observes that the trial court's determinations about what the relevant case law requires and the scope of this court's mandate are conclusions of law, not findings of fact.  *See In re Guardianship of Mesler*, 21 Wn. App. 2d 682, 708, 507 P.3d 864 (2022) ("Findings of fact are a determination of whether the evidence shows that something occurred or existed.  A determination made by a trial court through the process of legal reasoning . . . is a conclusion of law as opposed to a finding of fact." (citation omitted)).

[2] The State points out that each party "addressed" the scope of the orders at oral argument.  But the State argued in its written submission that "[t]he issue that must be addressed is the duration of the lifetime No Contact Orders," and the trial court's written order unambiguously accepted this characterization of the issue before it.  *Cf. State v. A.M.*, 163 Wn. App. 414, 424, 260 P.3d 229 (2011) ("Where written findings and conclusions have an unambiguous meaning, they are not susceptible to being given a different meaning on appeal through resort to an examination of the lower court's oral ruling.").

*State v. Ancira*, 107 Wn. App. 650, 654-55, 27 P.3d 1246 (2001) (holding that, while the father's crimes were tied to the children because they witnessed domestic violence against mother, a total five-year no-contact order had to address less restrictive alternatives such as prohibition on contact between parents).

It is telling that the court's findings look back to the harm that would have befallen the children had Lewis succeeded in his plan to have their mother killed, and its determination that the children were victims "and they are directly related to the crime the defendant as convicted of."

And the court does not materially bolster its orders by its conclusory statements that "[t]*he duration of these no contact orders for life* are appropriate, reasonably necessary to protect the[ ] children, and have been narrowly tailored to the facts of this case." (Emphasis added.) Even there, there is still no mention of the scope of the orders or any explanation why his children must be protected after the age of majority or after they are fully formed adults, e.g., at the age of 25. *Torres*, 198 Wn. App. at 690 (directing courts where needed to "consider whether the scope of the no-contact order should change over time [and] whether the ultimate length of the no-contact order [is] appropriate.").[3]

---

[3] The State points out that the trial court's order allows *the children* to seek modification of the no-contact orders should they desire future contact with their father. Meanwhile, Lewis argues that, even if the trial court can modify the separately entered no-contact orders in the future, it lacks the authority to modify the no-contact provisions in the judgment and sentence. Lewis did not raise this issue in the trial court, which should have the opportunity to address it first. On remand, the parties and the trial court are not precluded from addressing the court's authority to modify either the judgment and sentence or the separately entered domestic violence no-contact orders in the future. But this provision is insufficient as presently stated.

7

To repeat, Lewis's conduct undoubtedly put his children at substantial risk of great physical and emotional harm. But our case law requires that no-contact orders limiting parent-child contact be narrowly tailored to the State's interest in protecting the children from *further harm*. *See Reedy*, 26 Wn. App. 2d at 394 (noting that "the State's interest in protecting [the child victim] from further abuse is abundantly clear"). At this point, Lewis will be incarcerated for life, and there is a separate, unchallenged no-contact order prohibiting him from contacting Canales.

Because the trial court did not complete the relevant analysis on the record, we cannot discern from its rulings why, under these circumstances, it believed it was reasonably necessary to effectively terminate Lewis's relationship with each of his children.[4] *Cf. State v. Howard*, 182 Wn. App. 91, 102, 328 P.3d 969 (2014) (observing that lifetime no contact order "may be more than reasonably necessary" to protect children even where they witnessed their father try to kill their mother by shooting at her with a gun); *Reedy*, 26 Wn. App. at 392-93 (holding that "[i]n cases where a sentencing court gave an indeterminate or lengthy timeline for a no-contact order with a defendant's child, *particularly those cases that did not involve*

---

[4] The State points to evidence that, again in the past, Lewis engaged in petty behavior and was far from a model parent during supervised visitations with his children. It also points to unsworn statements from Canales and her father at sentencing. But there is no indication that the trial court relied on any of these, and by asking this court to do so, the State effectively asks this court to find facts, which we decline to do. *Cf. Reedy*, 182 Wn. App. at 394 (remanding for trial court to create a record where "we [were] unable, without becoming fact-finders ourselves, to consider whether [a] no-contact order was imposed 'sensitively' or whether it was 'narrowly tailored' to meet the safety needs of the community and the [child victim]").

*a defendant's direct sexual abuse of a child*, the reviewing courts of this state often have looked skeptically at the no-contact order." (emphasis added)).

### III.    CONCLUSION

We do not vacate the no-contact orders, but we remand to the trial court for further proceedings.[5]  On remand, the court must, on the record, consider how, if at all, to narrowly tailor the orders, both in terms of (1) its duration, including by recognizing that the State's interest to protect his children may change over time, and (2) its scope, including why less restrictive alternatives than complete termination of the parent child relationship are not appropriate.

Díaz, J.

WE CONCUR:

Feldman, J.

---

[5] We believe our opinion provides sufficient guidance to effectively limit the trial court's discretion on remand, and we have no concerns of the trial court complying with this opinion.  Accordingly, we deny Lewis's request to remand to a different judge.  *Cf. State v. Solis-Diaz*, 187 Wn.2d 535, 540-41, 387 P.3d 703 (2017) (observing that "reassignment is generally not available as an appellate remedy if an appellate opinion offers sufficient guidance to effectively limit trial court discretion on remand," but remanding to a different judge for a second resentencing where the record reflected the judge's "frustration and unhappiness at the Court of Appeals requiring him to address [a sentencing issue] anew," "[t]he judge's remarks at the first resentencing strongly suggest[ed] that, regardless of the information presented in mitigation, he [was] committed to the original . . . sentence," and concern about the judge's ability to consider mitigation evidence with an open mind was "heightened by the judge's statement that the length of the [original] sentence . . . ha[d] had a deterring effect on incidents of gang-related gun violence").